**FARM & CITY INSURANCE COMPANY, Appellant,**

**v.**

**Allan D. POTTER, Christine D. Potter, Michael Mercurio, and Hawkeye Security Insurance Company, Appellees.**

No. 67629.

Supreme Court of Iowa.

Feb. 16, 1983.

Paul E. Horvath of Davis, Grace, Horvath, Gonnerman & Rouwenhorst, P.C., Des Moines, for appellant.

Bernard L. Spaeth, Jr., of Whitfield, Musgrave, Selvy, Kelly & Eddy, Des Moines, for appellees.

Considered by REYNOLDSON, C.J., and LeGRAND, UHLENHOPP, HARRIS and McCORMICK, JJ.

LeGRAND, Justice.

This is a declaratory judgment action tried in equity to determine a dispute over insurance coverage under the terms of a policy issued by plaintiff, Farm & City Insurance Company, to defendants, Allan D. Potter and Christine D. Potter. The trial court found for defendants and we affirm.

On July 31, 1977, an automobile owned by Allan D. Potter and driven with his permission by his wife, Christine D. Potter, was involved in two early morning collisions. In the first a parked automobile owned by Michael Mercurio was damaged. In the second a residential property was struck and suffered substantial damage. This property was insured by defendant Hawkeye Security Insurance Company under a policy of insurance issued to the owner of that property.

Mercurio and Hawkeye sued the Potters to recover damages arising out of these two accidents. The Potters requested Farm & City to defend and to pay any judgment against them up to the policy limits. Farm & City refused to do so on the ground the policy did not cover the damages caused by the two collisions. Farm & City then brought this declaratory judgment to decide the question of coverage. Mercurio and Hawkeye were enjoined from prosecuting their suit against the Potters pending determination of the declaratory judgment action, to which both Mercurio and Hawkeye Security were made defendants.

Prior to trial, Farm & City accepted coverage for Allan but not for Christine, although she is also a named insured. This does not change the nature of this appeal because Farm & City's liability still depends upon whether the two collisions were "accidents." We therefore make no further reference to Farm & City's distinction as to coverage between Allan and Christine.

The question presented is whether the two collisions were "accidents" within the meaning of the insurance policy. The policy provision which determines this matter provides:

[Farm & City Insurance Company agrees] to pay on behalf of the insured [Allan D. Potter and Christine D. Potter] all sums which the insured shall become legally obligated to pay as damages because of the injury to, or *destruction of property,* including the loss of use thereof, *caused by accident* and arising out of the ownership, maintenance, or use of the automobile.

(Emphasis added.)

The case was tried under a stipulation entered into by the parties and the depositions of Allan D. Potter, Christine D. Potter, and Willetta Melton. On this *de novo* review we find the facts as follows.

On the evening of July 30, 1977, Christine was angry and depressed because her estranged husband had been seeing another woman. Out of frustration she designed a plan which she thought would both teach him a lesson and make him feel sorry for her. She planned to injure herself and to do damage to the Chevrolet automobile usually driven by Allan but which she had plenary permission to drive. Her original idea was to run the car into Gray's Lake in Des Moines. Later Christine abandoned this notion and decided instead to drive it into a telephone pole.

Christine took the Chevrolet from its parking space at her mother-in-law's home, where it was kept while Allan was out of town on his job as an over-the-road truck

driver. Then, Christine drove to her father's home, where she took a hammer and pair of wire cutters from his tool box. Next she drove to a gas station. There, with the help of the attendant, she learned the location of the brake lines. After driving to a more secluded location, she cut or pulled off the brake lines.

During all this time Christine was accompanied by her friend, Willetta Melton, who took no active part in Christine's activities. About this time, Christine asked Willetta to hit her with the hammer so that she could simulate injury. Willetta refused to do so. Christine then struck herself twice with the instrument. Following this, Christine, with Willetta a somewhat reluctant passenger, drove the car back toward her mother-in-law's home. With the brakes disabled, she was unable to slow the car and eventually ran a red light. A cruising patrol car immediately gave chase. In her efforts to stop the car, Christine ran across a concrete island located in the middle of an intersection. The car jumped the curb, went up a hill into a parking lot, and collided with Mr. Mercurio's vehicle. This was the first collision.

Both Christine and Willetta were taken to the hospital. They were treated and released. They returned to the scene of the collision by taxi. Christine, now quite understandably concerned that Allan would be angry, insisted they should drive the brakeless car back to Allan's mother's home where her own car was parked. At first Willetta refused, but finally went with Christine upon her promise to drive very slowly. Nevertheless Christine was unable to control the car in traversing a rather steep incline. At the bottom of this hill, the car struck the brick home insured by Hawkeye Security Insurance Company. This was the second collision.

Farm & City does not dispute that both collisions arose from "the use of the automobile." They contend, however, that neither collision was "caused by accident" because each resulted from Christine's voluntary and deliberate act in cutting the brake lines. This is the only issue in the case.

■ The policy nowhere defines the term "caused by accident." Consequently we give these words their ordinary rather than a technical meaning, one which a reasonable person would understand them to mean. *Central Bearings Co. v. Wolverine Insurance Co.,* 179 N.W.2d 443, 445 (Iowa 1970); *Goodsell v. State Automobile and Casualty Underwriters,* 261 Iowa 135, 140, 153 N.W.2d 458, 461 (1967). This rule is especially persuasive where, as here, there is no consensus regarding the proper definition of "accident." Compare *Black's Law Dictionary* 14 (rev. 5th Ed.1979) and *Webster's 3rd New International Dictionary* 11 (1966) with 1 *Words and Phrases* 469–650 (West 1964).

Our own case law cautions against any attempt to form an all inclusive definition of the term. *Central Bearings Co. v. Wolverine Insurance Co.,* 179 N.W.2d at 448; cf. *Rowe v. United Commercial Travelers' Ass'n,* 186 Iowa 454, 462–63, 172 N.W. 454, 457 (1919) (prolix attempts to define the word "accident" to a jury may serve to confuse rather than instruct). Accordingly, we approach the problem of deciding the meaning of "caused by accident" in this case with some misgivings.

■ At the outset we should note that this insurance contract is a liability policy which insures the tort feasor, not the victim. Thus, whatever constituted an accident—absent policy language to the contrary—should be decided from the viewpoint of the tort feasor. 6B J. Appleman, *Insurance Law and Practice* § 4312, at 322 & n. 13 (Buckley ed. 1979); R. Keeton, *Insurance Law* § 5(4)(a), at 290 (1971). We recognize there is authority that in considering questions of this kind the court should interpret the word "accident" from the standpoint of the injured innocent third party. The cases which adopt this rationale do so principally by the interpretation put on statutes which require automobile liability insurance. *Id.* at 290 & n. 11. Because of our disposition of this case, we need not reach that issue.

Farm & City argues that because Christine intentionally cut her car's brake lines a determination of whether Christine "expected" these particular collisions should be viewed by an objective "reasonable person" standard, rather than the test of subjectivity. Furthermore, Farm & City contends that, when Christine cut the brake lines, she must have expected to do damage to some person or some property, even though not to the specific property actually damaged. In response, defendants argue that if we adopt this approach the word "accident" would simply become another word for "negligence."

■ We agree with defendants. Under these circumstances we decline to narrow the term "accident," which has always been viewed as being more encompassing than the term negligence. 6B J. Appleman, *Insurance Law and Practice* § 4312, at 321 (Buckley ed. 1979); 12 *Couch on Insurance* § 45:35 (rev. ed. 1981). Plaintiff's argument might have merit if Christine had intended to harm some person other than herself or to damage property other than the family car. However, we need not choose between these concepts in the present case, because we find Christine had no such intent.

On this subject see generally *Terito v. McAndrew,* 246 So.2d 235, 239 (La.App. 1971) (no "accident" and therefore no liability coverage where insured intended to hit victim in mouth but instead broke victim's leg); *Vappi & Co. v. Aetna Casualty & Surety Co.,* 348 Mass. 427, 432, 204 N.E.2d 273, 276 (1965) (unintended consequences of reckless, intentional acts, if not undertaken "with malice or intent to injure the person hurt" may be within the definition of "accident"); *Subscribers AT Automobile Club Inter-Insurance Exchange,* 549 S.W.2d 587, 591 (Mo.App.1977); *Oakes v. State Farm Fire & Casualty Company,* 137 N.J.Super. 365, 368, 349 A.2d 102, 103 (1975) (rejecting insured's argument that he did not intend to inflict the *specific* injury which victim suffered); but see *Smith v. Moran,* 61 Ill. App.2d 157, 163, 209 N.E.2d 18, 20–21 (1965) (shooting of innocent third party victim was intentional act, but not intentional injury); *Indiana Lumbermens Mutual Insurance Co. v. Brandum,* 419 N.E.2d 246, 248 (Ind.Ct. App.1981) (inference to intent to cause specific harm should be made only when reason mandates that from the very nature of the act, harm to the injured party must have been intended); *Murray v. Landenberger,* 5 Ohio App.2d 294, 299, 215 N.E.2d 412, 416 (1966) (even where dangerous, intentional act was committed with intent to injure victim, resulting injury was not "caused by accident"); compare *Sullivan v. Great Plains Insurance Co.,* 210 Neb. 846, 853, 317 N.W.2d 375, 380 (1982) (evidence must show either that insured intended particular damage or *similar* damage before policy does not apply). Again, we have no need to decide this question because we find Christine never intended to harm anyone other than herself or to damage any property except the family car.

■ With all this in mind, we look, as did the trial court, to *Comfort v. Continental Casualty Company,* 239 Iowa 1206, 1207–1210, 34 N.W.2d 588, 588–590 (1948), where we find this:

> [A]n "accident" is an event which, under the circumstances, is unusual and *unexpected by the person to whom it happens;* the happening of events without the concurrence of the will of the person by whose agency it is caused.
>
> \*　　\*　　\*　　\*　　\*　　\*
>
> It makes no difference whether the injured man . . . voluntarily sets in motion the first of a series of events which, in a connected line of causation, results in his injury or death. If . . . the resulting injury and violence to him "unexpectedly took place," or "was an unexpected result from a known cause," or was produced "without design or intention," . . . it falls directly within the letter and spirit of the definition which has been placed upon the words by the most competent lexicographers, as well as by our most eminent jurists who have given attention thereto.

(Emphasis added.)

In the instant case, although Christine voluntarily set in motion the sequence of

events causing the collisions by cutting the brake lines of the Chevrolet, in both cases the preponderance of the evidence supports the conclusion she did not intend either event which occurred. The circumstances are somewhat different in each, and we therefore discuss them separately.

The first collision occurred only after Christine was unable to control the car when she attempted to stop after a patrol car pursued her. At the time she was doing everything possible to avoid a collision. It is true her difficulty arose from her own previous misconduct in severing the brake lines. It is true, too, that she may have been on her way to where she *wanted* an "accident" to happen. However, at the time and place where this collision occurred, the evidence is without dispute that Christine was in the process of attempting to avoid it.

The circumstances of the second collision are even more favorable for defendant. When Christine returned from the hospital and decided to drive the car back to the location from which she had taken it in the first place, she was apprehensive about her husband's reaction to her conduct. She had then apparently abandoned any intention of doing damage to Allan's car. During that journey, she remarked to Willetta that she should "drive the car right through [Allan's] mother's garage." This was merely an expression of frustration with no real purpose of accomplishment. The evidence is clear that on this trip she drove as carefully as one can drive a brakeless vehicle. It is clear, too, her only intention then was to return the car where it belonged and to pick up her own car.

Of course, she should not have driven the car without brakes. Of course, this was negligence; perhaps it was recklessness. Such conduct, however, does not excuse Farm & City from coverage for the resulting damage.

The evidence as to both collisions shows that neither was intended by Christine. As *Comfort* holds, the fact that her previous voluntary and deliberate acts set in motion the events which eventually resulted in two collisions does not preclude these events from being accidents. 239 Iowa at 1210, 34 N.W.2d at 590.

In summary, we point out this is not a tort action by which an injured party seeks redress from an alleged wrongdoer. This is a suit between insurer and insured to determine the meaning of a policy provision prepared by the insurer and inserted in the policy without definition or explanation. Under this record, the trial court was right in holding plaintiff's insurance contract covered the Potters for both of these collisions. We affirm the declaratory judgment in their favor.

AFFIRMED.