568 N.W.2d 815 (1997)
IOWA COMPREHENSIVE PETROLEUM UNDERGROUND STORAGE TANK FUND BOARD, Appellant,
v.
FARMLAND MUTUAL INSURANCE COMPANY, Appellee.
No. 96-512.
Supreme Court of Iowa.
September 17, 1997.
*816 John R. Perkins and Thomas S. Stewart of Shearer, Templer & Pingel, West Des Moines, for appellant.
Douglas A. Haag of Patterson, Lorentzen, Duffield, Timmons, Irish, Becker & Ordway, L.L.P., Des Moines, for appellee.
Eugene R. Anderson and John A. Mac-Donald of Anderson Kill & Olick, P.C., New York City, NY, John C. Hendricks of Stanley, Lande & Hunter, Davenport, and Amy Bach of United Policyholders, San Francisco, CA, for amicus curiae United Policyholders.
Mark McCormick and Roger Stetson of Belin Harris Lamson McCormick, P.C., Des Moines, Lester O. Brown of Jones, Day, Reavis & Pogue, Los Angeles, CA, and Donna C. Peavler and Britt K. Latham of Jones, Day, Reavis & Pogue, Dallas, TX, for amicus curiae IES Utilities, Inc.
Laura A. Foggan, Robert B. Bell, and Luis de la Torre of Wiley, Rein & Fielding, Washington, DC, Fred M. Haskins, Iowa Insurance Institute, Des Moines, and Frank J. Stork of Law Offices of Frank J. Stork, Des Moines, for amici curiae Insurance Environmental Litigation Association, Iowa Insurance Institute, and American Insurance Association.
Considered by McGIVERIN, C.J., and HARRIS, LARSON, CARTER, and SNELL, JJ.
LARSON, Justice.
This appeal involves our interpretation of the word "sudden" in a pollution-exclusion provision of a comprehensive general liability insurance policy. The issue is whether "sudden" requires that the pollution occur abruptly, as a "boom event," as argued by the insurer, or whether it is sufficient that the event be merely unforeseen or unexpected, as argued by the insured. We agree with the district court's interpretation of the word sudden as including a temporal aspect requiring an abrupt event. We therefore affirm the summary judgment.

I. Facts.

The following facts are undisputed. The pollution site is the former Hancock County Cooperative (Coop) retail gasoline station in Ventura, Iowa. Gasoline contamination to the soil and groundwater has occurred at the *817 site, seeping from steel underground storage tanks located on the property. The property has been owned and operated as a retail gas station by the cooperative since the 1930s. The leaking underground tanks were removed in 1988, but the gasoline contamination to soil and groundwater at the site was not discovered until May 1990.
The storage tanks began to release gasoline into the soil and groundwater because of corrosion to the tank walls at least ten years prior to their removal in 1988. The storage tanks were releasing gasoline into the environment during one or more of the policy years during which Farmland Mutual Insurance Company's comprehensive general liability policies were in force.
All of the insurance policies issued to the Coop by Farmland contained the following standard pollution exclusion:
(b) Exclusions
This insurance does not apply to:
....
(6) bodily injury or property damage arising out of the discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials or other irritants, contaminants or pollutants into or upon land, the atmosphere or any water course or body of water; but this exclusion does not apply if such discharge, dispersal, release or escape is sudden and accidental.

(Emphasis added.)
The Iowa Comprehensive Underground Storage Tank Fund Board (the board) took remedial action at the contamination site and, as the Coop's assignee, made demands on Farmland for its costs. The board filed a declaratory judgment action, asking the court to interpret the "sudden and accidental" language in the policy.

II. Scope of Review.

We review a summary judgment ruling for error. Summary judgment may be entered if the record shows "no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Iowa R. Civ. P. 237(c). Thus, "we examine the record before the district court to decide whether a genuine issue of material fact exists and whether the court correctly applied the law." In doing so, we view the facts in the light most favorable to the party opposing the motion for summary judgment.
Anderson v. Miller, 559 N.W.2d 29, 31 (Iowa 1997) (citations omitted) (quoting Gerst v. Marshall, 549 N.W.2d 810, 811-12 (Iowa 1996) (quoting Benavides v. J.C. Penney Life Ins. Co., 539 N.W.2d 352, 354 (Iowa 1995))).

III. Analysis.

This dispute centers on the provision in the policy stating that "this exclusion does not apply if such discharge, dispersal, release or escape is sudden and accidental." Farmland argues that the term "sudden" is unambiguous, that it has a temporal requirement, and that it is synonymous with the word "abrupt." The board, on the other hand, argues that "sudden" is ambiguous because it can also mean unforeseen or unexpected.
Well-established principles guide the construction and interpretation of insurance policies:
"Construction of an insurance policythe process of determining its legal effectis a question of law for the court. Interpretationthe process of determining the meaning of words usedis also a question of law for the court unless it depends on extrinsic evidence or a choice among reasonable inferences to be drawn."
Allied Mut. Ins. Co. v. Costello, 557 N.W.2d 284, 286 (Iowa 1996) (quoting A. Y. McDonald Indus., Inc. v. Insurance Co. of N. Am., 475 N.W.2d 607, 618 (Iowa 1991)).
If an insurance policy is ambiguous, requires interpretation, or is susceptible of two equally plausible constructions, we adopt the construction that is most favorable to the insured. This principle of construction is necessary because insurance policies are in the nature of adhesion contracts. Thus an insurer has a duty to define any limitations or exclusionary clauses in clear and explicit terms. The burden of establishing an exclusion rests upon the insurer.
*818 Allied Mut., 557 N.W.2d at 286 (citations omitted) (citing West Bend Mut. Ins. Co. v. Iowa Iron Works, Inc., 503 N.W.2d 596, 598 (Iowa 1993)); see also Farm & City Ins. Co. v. Gilmore, 539 N.W.2d 154, 157 (Iowa 1995) (outlining the rules guiding the interpretation of exclusions).
The controlling consideration in interpreting insurance policies is the intent of the parties. Pierce v. Farm Bureau Mut. Ins. Co., 548 N.W.2d 551, 555 (Iowa 1996). We ordinarily determine that intent from the language of the policy itself unless the policy is ambiguous. Kibbee v. State Farm Fire & Cas. Co., 525 N.W.2d 866, 868 (Iowa 1994). When a policy term is not defined in the policy, as in this case, we give the term its ordinary meaning. Pierce, 548 N.W.2d at 555. In searching for that meaning, we often look to dictionaries. Id
As with most words, "sudden" has more than one dictionary meaning. Webster's Third New International Dictionary 2284 (1986) provides these definitions:
1a: happening without previous notice or with very brief notice: coming or occurring unexpectedly: not foreseen or prepared for ... b: changing angle or character all at once ... c: come upon or met with unexpectedly ... 2 a: characterized by or manifesting hastiness ... b obs: characterized by swift action.
We have said that:
Ambiguity exists if, after the application of pertinent rules of interpretation to the policy, a genuine uncertainty results as to which one of two or more meanings is the proper one.
A.Y. McDonald Indus., Inc., 475 N.W.2d at 618. If the term is susceptible to two reasonable interpretations, the interpretation favoring the insured is adopted. See West Bend Mut. Ins. Co., 503 N.W.2d at 598-99; A.Y. McDonald Indus., Inc., 475 N.W.2d at
The board concedes that a temporal element is a part of the definition of sudden, but it argues that the word is also defined as "unexpected" or "unforeseen," "neither of which has a temporal connotation." For this reason, the board argues, the term is ambiguous, and the board should get the benefit of the ambiguity. Compare Just v. Land Reclamation Ltd., 155 Wis.2d 737, 456 N.W.2d 570, 573 (1990) ("The very fact that recognized dictionaries differ on the primary definition of `sudden' is evidence in and of itself that the term is ambiguous."), with New Castle County v. Hartford Accident & Indent. Co., 933 F.2d 1162, 1193 (3d Cir.1991) ("[T]he existence of more than one dictionary definition is not the sine qua non of ambiguity. If it were, few words would be unambiguous.").
The parties cite numerous cases on both sides of this frequently litigated issue. Lists of cases from other jurisdictions on both sides of the issue may easily be found. See, e.g., New Castle County, 933 F.2d at 1195 (providing lengthy list of cases from other jurisdictions falling on both sides of the issue).
Although we have not addressed this specific issue, we have discussed the meaning of the word "accidental," the tandem word in the "sudden and accidental" language of the pollution-exclusion clause. See Weber v. IMT Ins. Co., 462 N.W.2d 283 (Iowa 1990). Weber turned on whether a hog manure spill on a public road was a "sudden and accidental" occurrence under the terms of the pollution exclusion. We said:
We adopt the following definition of accidental for the purposes of this liability policy: an unexpected and unintended event. This definition is consistent with our own definition of accident, as well as the definition for accidental adopted by most courts.
Id. at 287. Because we found that the manure spill was not "accidental," it was not necessary for us to decide whether it was also sudden. Although Weber did not directly interpret the word "sudden," it adopted a broad definition of "accidental" that, we believe, forecloses an interpretation of sudden as an unexpected or unintended event.
We said in Weber that: "[A]n interpretation which gives a reasonable, lawful, and effective meaning to all terms is preferred to an interpretation which leaves a part unreasonable, unlawful or of no effect." Id. at 286 *819 (quoting Berryhill v. Hatt, 428 N.W.2d 647, 655 (Iowa 1988)). Interpretation of sudden as merely unforeseen or unexpected would render either the term "accidental" or "sudden" redundant; they would mean virtually the same. See New Castle County, 933 F.2d at 1194-95 ("To define sudden as meaning only unexpected or unintended, and therefore as a mere restatement of accidental, would render the suddenness requirement mere surplusage.") (quoting Lower Paxton Township v. United States Fidelity & Guar. Co., 383 Pa.Super. 558, 577, 557 A.2d 393, 402 (Ct.1989)).
For this reason, the interpretation proposed by the board would not be a reasonable one, and to find an ambiguity, the policy language must be susceptible to two reasonable interpretations. Kibbee, 525 N.W.2d at 868. We therefore agree with the district court that "sudden" is not ambiguous and that the exception to the pollution-exclusion provision requiring that the event be "sudden and accidental" was not met as a matter of law. According to the undisputed facts, the pollution occurred over a period of many years.

IV. The Leakage as a "Sudden" Event.

The board argues in the alternative that the leakage in this case was in fact sudden because, at some instant in time, the first drop of gasoline escaped from a storage tank in a sudden manner. The board cites no authority for this proposition, and we believe that such an interpretation would not be reasonable.
While the occurrence of the first drop of leakage might have been sudden, the ground contamination, which is the condition involved here, was not. It occurred over a period of more than ten years. We reject the board's "suddenness" argument.

V. The Extrinsic Evidence Issue.

The board attempts to use extrinsic evidence of events that took place in the insurance industry in Iowa in the 1970s to show an ambiguity. According to its argument, when "sudden" was added to the standard pollution exclusion, many parties in the insurance industry, including the Iowa Insurance Commissioner, did not believe that this term added a temporal element.
While the general rule has been that the provision that is unambiguous in its terms may not be "explained" by extrinsic evidence, the board argues that we may nevertheless conclude that a facially unambiguous policy provision can become ambiguous because of extrinsic evidence bearing on the situation of the parties. See, e.g., Grinnell Mut. Reins. Co. v. Voeltz, 431 N.W.2d 783, 786 (Iowa 1988) (citing Wohlenhaus v. Pottawattamie Mut. Ins. Ass'n, 407 N.W.2d 572, 575-76 (Iowa 1987)). Under this theory, a court will not enforce a policy exclusion if it "eliminates the dominant purpose of the transaction." Wohlenhaus, 407 N.W.2d at 576 (quoting Lepic v. Iowa Mut. Ins. Co., 402 N.W.2d 758, 761 (Iowa 1987)).
We have said that:
"[A] party who adheres to the other party's standard terms does not assent to a term if the other party has reason to believe that the adhering party would not have accepted the agreement if he had known that the agreement contained the particular term. Such a belief or assumption may be shown by the prior negotiations or inferred from the circumstances."
Grinnell Mut. Reins. Co., 431 N.W.2d at 786 (quoting C & J Fertilizer, Inc. v. Allied Mut. Ins. Co., 227 N.W.2d 169, 176 (Iowa 1975)).
Here, there is no claim that Farmland and the Coop had any understanding about whether a temporal element was a part of the pollution exclusion. To hold that this was even a consideration in the purchase of the insurance policies would be pure speculation. We reject the board's argument that the court should have considered the industry "understanding" in 1970 in interpreting the sudden and accidental language of the policies.
We have considered all remaining arguments and find them to be without merit. Accordingly, we affirm the judgment of the district court.
AFFIRMED.