# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2003-CA-02439-SCT

*ZURICH AMERICAN INSURANCE COMPANY*

*v.*

*BARBARA G. GOODWIN, INDIVIDUALLY; RAPHAEL GOODWIN, JR., INDIVIDUALLY; EMMA DELORES GOODWIN, A MINOR, BY AND THROUGH HER MOTHER AND NEXT FRIEND, VALERIE HUGHES; THE ESTATE OF RAPHAEL GOODWIN, SR., BARBARA G. GOODWIN, ADMINISTRATRIX; ROBIN C. THRASHER; LAURA NAUDITT; LIZABETH NUTTER; KELLY THRASHER, INDIVIDUALLY AND ON BEHALF OF ALL WRONGFUL DEATH BENEFICIARIES OF GUY STEPHEN THRASHER; AND ROY C. GRAFE AND HELEN KAY GRAFE*

| | |
|---|---|
| DATE OF JUDGMENT: | 10/28/2003 |
| TRIAL JUDGE: | HON. ROBERT G. EVANS |
| COURT FROM WHICH APPEALED: | COVINGTON COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | EDWARD J. CURRIE, JR. |
| | BRITTANY ELIZABETH REID |
| ATTORNEYS FOR APPELLEES: | HENRY PALMER |
| | WILLIAM B. PARKER |
| | O. STEPHEN MONTAGNET, III |
| | GROVER CLARK MONROE, II |
| NATURE OF THE CASE: | CIVIL - INSURANCE |
| DISPOSITION: | REVERSED AND REMANDED - 01/26/2006 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**COBB, PRESIDING JUSTICE, FOR THE COURT:**

¶1.     Zurich American Insurance Company (Zurich) filed this appeal from the Covington County Circuit Court's grant of summary judgment to three sets of plaintiffs involved in a multi-vehicle accident.  Zurich, one of many defendants, provides liability insurance to another defendant, West Side Transport, Inc. (West Side).  The summary judgment addressed the limit of liability under the Zurich policy, specifically whether Zurich's liability is limited to $1 million due to a "single accident," or $1 million for each vehicle connected to the collision. The circuit court held that Mississippi law controlled, found the insurance policy ambiguous, held that under Mississippi law there were eight accidents rather than one, and that the "per accident" limit of $1 million would apply to each vehicle.  We hold that the circuit court erred, because the question of the limit of liability must be determined under Iowa law.

## FACTS

¶2.     On June 20, 2002, road work being done by other defendants caused a backup of traffic on Interstate 20/59 in Lauderdale County, Mississippi.  An eighteen-wheel truck, operated by Joseph McCrary, a West Side employee, encountered the backup of traffic, was unable to stop, and collided with eight other vehicles, causing two fatalities, numerous injuries and property damage.  The driver of the truck was insured under West Side's         Truckers Policy, issued by Zurich, which provided a liability limit of $1 million for any one accident.  Subsequently three separate actions were filed in Mississippi state courts, and a federal interpleader action was also filed.[1]

---

[1]On July 2, 2002 West Side and Zurich filed a federal action for interpleader relief, naming all known plaintiffs and defendants as defendants, and depositing $1 million with the court, asking the court to find $1 million to be the limit of their liability covering all plaintiffs' claims.  There were several other complaints and proceedings involved in this case that are not discussed here, including the removal of all cases to federal court and

¶3. The first complaint was by the wrongful death beneficiaries of Raphael Goodwin (Goodwin) in the Lauderdale County Circuit Court. Defendants included Joseph McCrary, the driver of the truck, and West Side, owner of the truck. Next, plaintiffs Kay and Roy Grafe (Grafe) filed a personal injury complaint in the Covington County Circuit Court. A month later, the wrongful death beneficiaries of Stephen Thrasher (Thrasher) filed suit in the Covington County Circuit Court, also naming as defendants all known plaintiffs and defendants, and seeking a declaratory judgment regarding the Zurich insurance policy.

¶4. West Side is an Iowa corporation with its principal place of business in Iowa. West Side's insurance policy was negotiated and issued in Iowa by Cottingham and Butler, Inc., which has its principal place of business in Iowa. Zurich is a New York corporation with its principal place of business in Illinois. The main state of operation for West Side's drivers is Iowa, although West Side admits its drivers travel to and from various states to facilitate the corporation's business. The truck was licensed in Iowa. The Zurich policy includes policy extensions for a covered vehicle, when it is away from the state where it is licensed, that will increase the limit of insurance for liability coverage to meet the limit specified by a compulsory or financial responsibility law of the jurisdiction where the covered vehicle is being used. The insurance contract contained no choice of law provision.

¶5. In January 2003, Thrasher filed a summary judgment motion against Zurich in which Goodwin and Grafe joined. This motion requested the court find Mississippi law controlled

subsequent agreed order to remand to the respective trial courts; declaratory judgment relief filed by Zurich in federal court; and requests for stays by both sides in their respective preferred venues.

3

the issue of Zurich's limit of liability, and that the $1 million liability limit applied separately to each plaintiff. Zurich filed a response and cross-motion for summary judgment arguing that Iowa law should apply and, in the alternative, that under either Iowa or Mississippi law all of the plaintiffs' claims arose from a single "accident."

¶6. In May 2003, after a hearing on the motion for summary judgment, the circuit court held that Mississippi law controlled, but reserved ruling on the issue of the number of accidents involved, to give the parties additional opportunity to be heard. The order read, in pertinent part:

> As to the choice of law question, the Court finds that Mississippi law applies. Because all plaintiffs are Mississippi residents, the accident occurred in Mississippi, and since it was foreseeable to Zurich that its insured would be involved in accidents along Mississippi highways, the Court finds that Mississippi law applies to this declaratory judgment action for reasons of public policy and under the "center of gravity test".

In October 2003, the circuit court entered three substantially identical orders granting summary judgment to the plaintiffs, overruling Zurich's cross-motion for summary judgment, and directing entry of final judgment pursuant to M.R.C.P. 54(b). In these orders the court held:

> 1) Mississippi law should be applied in the construction of the insurance policy in question by reason of the "center of gravity test" and as a matter of public policy;
>
> 2) that the policy is ambiguous with regard to the phrase "accident or loss"; and
>
> 3) the Court views the occurrence of June 20, 2002 from the viewpoint of the injured parties, and from such viewpoint there were eight (8) accidents with $1 million coverage for each accident, or stated differently, $1 million in liability coverage per vehicle struck by the Westside Transport, Inc./insured vehicle.

4

It appears the circuit court's analysis substituted one typical of personal jurisdiction. We have previously cautioned against this error. Choice of law analysis is entirely different from that of minimum contacts. Choice of law does not depend upon minimization of contacts, but rather upon maximization of contacts. Even though a defendant may have availed itself of Mississippi so that personal jurisdiction is proper, it does not necessitate the application of Mississippi law. Zurich appeals from these orders, asking this Court to hold that the circuit court erred in each of its three holdings. We hold the trial court erred in its determination that Mississippi law applied and remand for further proceedings consistent with this opinion.

## ANALYSIS

¶7.     This Court reviews de novo the granting or denying of a summary judgment. *Monsanto Co. v. Hall*, 912 So. 2d 134, 136 (Miss. 2005). The burden of demonstrating no genuine issue of fact exists is on the moving party. *McCullough v. Cook*, 679 So. 2d 627, 630 (Miss. 1996). If, in this view, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law, summary judgment should be entered in that party's favor. *Monsanto*, 912 So. 2d at 136. The party opposing the motion must be diligent and may not rest upon allegations or denials in the pleadings but must set forth specific facts showing a genuine issue for trial. *Richmond v. Benchmark Constr. Corp*., 692 So. 2d 60, 61 (Miss. 1997).

### I.  CHOICE OF LAW

¶8.     Choice of law analysis arises only when there is a true conflict between the laws of two states, each having an interest in the litigation. *Boardman v. United Servs. Auto. Ass'n*, 470 So. 2d 1024, 1038 (Miss. 1985). In this case there is a true conflict between the law of Iowa

5

and Mississippi. Under Iowa law the court will determine whether an event was an "accident" by viewing the event from the perspective of the *insured*. ***Am. Family Mut. Ins. Co. v. Petersen,*** 679 N.W.2d 571, 579-81 (Iowa 2004); ***Farm & City Ins. Co. v. Potter,*** 330 N.W.2d 263, 265 (Iowa 1983). Under Mississippi law, unless the policy specifically states that it is viewed from the perspective of the insured, it will be viewed from the perspective of the *injured*. ***Allstate Ins. Co. v. Moulton,*** 464 So. 2d 507, 510 (Miss. 1985); ***Georgia Cas. Co. v. Alden Mills,*** 156 Miss. 853, 853, 127 So. 555, 557 (1930).

¶9. Choice of law analysis involves a multi-step process. First it must be determined whether the conflicting laws are substantive or procedural. Regardless of the substantive law to be applied, Mississippi courts will apply their own procedural law. ***Ford v. State Farm Ins. Co.,*** 625 So. 2d 792, 793 (Miss. 1993). However, few laws are classified as procedural. In addition to the Mississippi Rules of Civil Procedure, and Rules of Evidence, we have only found the definition of "procedural" to include statutes of limitations, awards of attorney's fees and awards of prejudgment interest. ***Sentinel Indus. Contracting Corp. v. Kimmins Indus. Serv. Corp.***, 743 So. 2d 954, 960 (Miss. 1999)(finding awards of attorney's fees and prejudgment interest procedural); ***Ford***, 625 So. 2d at 793-794 (finding statutes of limitations procedural). The present case does not deal with any of those; rather it deals with contract construction, and we have held that contract construction is substantive. ***Boardman***, 470 So. 2d at 1039. As a result, this appeal is resolved under the Restatement (Second) of Conflict of Laws (Restatement).

¶10. In determining which State's law to apply, Mississippi relies on the "center of gravity" doctrine of the Restatement. *Mitchell v. Craft*, 211 So. 2d 509, 510 (Miss. 1968). In *Mitchell* this Court described the center of gravity doctrine:

> This doctrine is a rule whereby the court trying the action applies the law of the place which has the most significant relationship to the event and parties or which, because of the relationship or contact with the event and parties, has the greatest concern with the specific issues with respect to the liabilities and rights of the parties to the litigation.

*Id.* at 514-15 (citing *Craig v. Columbus Compress & Warehouse Co.*, 210 So. 2d 645, 648-49 (Miss. 1968)).

¶11. The second step in choice of law analysis is to classify the substantive area of law. Each area of law, whether tort, property or contract, has its own analytical provisions. Because the present case is capable of sounding both in tort and contract, a classification of one or the other could result in a different conclusion. In *Boardman* we determined that in actions interpreting contract provisions which arise from a tort committed by one of the parties, the appropriate classification is under contract. *Boardman*, 470 So.2d at 1039.

¶12. For analysis under contract, the Restatement supplies both general and specific provisions. However, the drafters of the Restatement did not explicitly state whether analysis should begin with the general or specific provisions. In *Boardman* we held the drafters intended the specific provisions of sections 188 and 193 to be guiding and the general provisions of section 6 to have secondary importance. *Id.* at 1032.[2] This holding is backed by

---

[2]The federal courts have commented that this Court favors the application of the specific provisions of the Restatement and, only after determining which state has the most significant interest in the subject matter of the litigation, uses section 6 to balance state policy interests. *Dees v. Hallum*, 721 F. Supp. 789, 791 n.3 (N.D. Miss. 1989). This

7

Comment c to section 6 and Comment b to section 188 which state that one should look to section 6 to find the underlying principles or guideposts.

¶13. The third step, which is the heart of the analysis, begins by turning to the contract-specific provisions of the Restatement. Two controlling sections of the Restatement have been adopted in Mississippi – section 188 governing contracts in general and section 193 governing casualty insurance contracts. *Id*. at 1032-33. The plaintiffs argue section 193 is controlling because the insured risk, the truck, was in Mississippi and Zurich could have foreseen its exposure to liability in states other than Iowa. Section 193 states:

> The validity of a contract of fire, surety or casualty insurance and the rights created thereby are determined by the local law of the state which the parties understood was to be the *principal location of the insured risk* during the term of the policy, unless with respect to the particular issue, some other state has a more significant relationship under the principles stated in § 6 to the transaction and the parties, in which event the local law of the other state will apply.

Restatement (Second) of Conflicts of Laws § 193 (1971) (emphasis added). For several reasons, we find section 193 cannot be applied. The primary question here, like the question in *Boardman,* is one of coverage. The location of the risk is irrelevant for considerations of the question of coverage. As a result, the issue invokes the exception to the rule. *Boardman*, 470 So. 2d at 1033-34.

¶14. The lynchpin of section 193 is that the parties must be able to identify a principal location of the risk. That cannot be done in the present case. Comments a, b, and d to section

creates a de facto presumption of the appropriate law which can be rebutted by application of the principles of section 6. *Allison v. ITE Imperial Corp.*, 928 F.2d 137, 143 (5th Cir. 1991). The Fifth Circuit has gone so far as to say that, subsequent to *Mitchell,* this Court has "given little, if any, actual weight to the policy considerations in § 6." *Id*. at 141.

193 provide guidance. The insurance policy covered West Side's entire fleet and not just the one truck driven by McCrary. Therefore it is difficult to determine a principal location of the risk because the risk is so diffuse. Comment a to section 193 states:

> There may be *no principal location of the insured risk* in the case of contracts for the insurance of things, such as ships, *trucks*, airplanes and railroad cars, that are constantly on the move from state to state. In such a case, the location of the risk can play little role in the determination of the applicable law. *The law governing insurance contracts of this latter sort must be determined in accordance with the principles set forth in the rule of § 188.*

Restatement (Second) of Conflict of Laws § 193 cmt. a (1971) (emphasis added). Section 193 was drafted to deal with immovables and chattel whose location remained geographically localized. ***Boardman,*** 470 So. 2d at 1033. The plaintiffs argue that under Comment d the drafters of the Restatement foresaw this problem and provided a mechanism of transferring the principal location of the insured risk after the creation of the insurance contract. Put another way, a principal location of the risk can be moved from place-to-place after the creation of the contract, allowing courts to apply substantive law that is different than the contract parties' understanding, but only if it was originally foreseeable.

¶15. The Court of Appeals has agreed with that argument, but we find application to the present set of facts inappropriate. *See **Baites v. State Farm Mut. Auto. Ins. Co.,*** 733 So. 2d 320, 323 (Miss. Ct. App. 1998). In ***Baites*** the Court of Appeals held the principal location of the risk shifted to Mississippi, but held that Mississippi law would not apply because the shift was not foreseeable because of the insured's deception. ***Id.*** at 323-24. Key in ***Baites*** was that the risk, an automobile, had been present in Mississippi for months preceding the incident. We find this analysis correct and adopt the holding of the Court of Appeals in ***Baites*** that it is

9

possible for the principal location of a risk to change but only if a substantial period of time has elapsed and it was both prospectively foreseeable and concurrently visible to the insurer. In the present case it is not clear how long West Side's truck had been in Mississippi. However McCrary, the driver of the truck, was a resident of Alabama, and he was on a stretch of interstate which connects Alabama and Mississippi in a county on the border between the two states.

¶16.    The truck driven by McCrary was not the only risk that Zurich insured for West Side. West Side had a large fleet which was insured by Zurich.  Zurich has stated, and the plaintiffs have not contradicted, that West Side's principal location of business was at all times in Iowa, but that its trucks did engage in interstate travel to serve its corporate business.  As a result, these trucks were scattered and constantly on the move.  Because of this, we find that Comment b controls and thus section 193 does not apply.  Comment b states:

> The location of the insured risk will be given greater weight than any other single contact in determining the state of the applicable law *provided that the risk can be located, at least principally, in a single state.  Situations where this cannot be done, and where the location of the risk has less significance, include (1) where the insured object will be more or less constantly on the move from state to state during the term of the policy and (2) where the policy covers a group of risks that are scattered through two or more states.*

Restatement (Second) of Conflict of Laws § 193 cmt. b (1971) (emphasis added).

¶17.    Because section 193 does not apply, the determination must be made under section 188.  Section 188 in relevant parts states:

> (2) In the absence of an effective choice of law by the parties (see § 187), the contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include:
>
> (a) the place of contracting,

10

(b) the place of negotiation of the contract,

(c) the place of performance,

(d) the location of the subject matter of the contract, *and*

(e) the domicile, residence, nationality, place of incorporation and place of business of the parties.

These contacts are to be evaluated according to their *relative importance* with respect to the particular issue.

(3) If the place of negotiating the contract and the place of performance are in the same state, the local law of this state will usually be applied, except as otherwise provided in §§ 189-199 and 203.

Restatement (Second) of Conflict of Laws § 188 (2)-(3) (1971) (emphasis added). This Court

does not apply the principles of section 188 mathematically; rather, it balances them to find

a practical application. **Boardman**, 470 So. 2d at 1034.[3] It is undisputed the place of

contracting and the place of negotiation were both in Iowa. The plaintiffs assert that the place

of performance will be in Mississippi because that is where Zurich will pay the proceeds of

the policy. However, we find the place of performance is in Iowa. All the relevant activities

between the parties take place in Iowa. They conduct business with each other in Iowa. All

payments of premiums are made in Iowa. Any action taken on the insurance contract will likely

be settled between the parties in Iowa. That Mississippians receive the benefit of proceeds

---

[3] In *Association of Trial Lawyers Assurance v. Tsai*, 879 So.2d 1024, 1028 (Miss. 2004), we held that "because the insurance policy in question involves questions of interpretation of the policy," the state of issuance (Illinois) of the policy governs. No further analysis was given. The result of this holding was correct, but the reasoning was incorrect. Illinois law applied not because that was where the contract was issued but because the parties included a choice of law provision in their contract making such analysis unnecessary. *We make it clear today that the place a contract was issued is irrelevant in choice of law cases, and the reasoning in Tsai was incorrect.*

paid in Iowa is incidental to the action, and it is only fortuitous that Mississippi courts are even involved.

¶18. It is undisputed that West Side's primary place of operation is Iowa. The bulk of its equipment, capital and manpower are in Iowa. Therefore, it stands to reason that the location of the subject matter of the contract is in Iowa. While it has been admitted that West Side operates outside of Iowa, there is no indication that these activities take place with any frequency in Mississippi, and even if they do, the frequency is much less than in Iowa. Lastly, the domicile of the parties to the contract are in Iowa, Illinois and New York, not in Mississippi. Subsection e speaks in terms of the parties to the contract, not those who may become unintended beneficiaries. These factors point toward application of Iowa law. Therefore, we hold that under section 188 Iowa law should apply.

¶19. As mentioned supra, this Court has interpreted section 188 as creating a presumption that can be rebutted by weighing the relative interests of the forum and other interested states under section 6. The relevant parts of section 6 state:

> (1) A court, subject to constitutional restrictions, will follow a statutory directive of its own state on choice of law.
>
> (2) When there is no such directive, the factors relevant to the choice of the applicable rule of law include:
>
> (a) the needs of the interstate and international systems,
>
> (b) the relevant policies of the forum,
>
> (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,
>
> (d) the protection of justified expectations,

(e) the basic policies underlying the particular field of law,

(f) certainty, predictability and uniformity of result, *and*

(g) ease in the determination and application of the law to be applied.

Restatement (Second) of Conflict of Laws § 6 (1)-(2) (1971) (emphasis added).   The plaintiffs contend Mississippi has a greater interest in this case than does Iowa because Mississippi plaintiffs will be affected by the outcome.   Further, the plaintiffs assert that Zurich has consented to the application of Mississippi law by originally filing a federal interpleader action in Mississippi federal court.   However, these factors do not rebut the presumption that the "center of gravity" in this litigation is in Iowa.   We have held that the fact that a cause of action arose in Mississippi and that Mississippians are involved does not in itself generate an interest in Mississippi that is superior to that of another state.  ***Owens v. Miss. Farm Bureau Cas. Ins. Co.***, 910 So. 2d 1065, 1072 (Miss. 2005); ***O'Rourke v. Colonial Ins. Co.***, 627 So. 2d 84, 87 (Miss. 1993).   The focus must be placed on the state of real interest, which in this case is Iowa. *See **McDaniel***, 556 So.2d at 311.   These are Iowa parties, an Iowa transaction, and an Iowa contract.   The interest of Iowa in the regulation of its businesses and contracts is superior to that of Mississippi even if it means that Mississippians receive less compensation for their injuries.  *See generally **O'Rourke,*** 627 So. 2d at 87.   The occurrence of the accident in Mississippi and injury to Mississippians is fortuitous because they arise from an incident which is not specifically relevant to the true dispute.  ***Boardman***, 470 So. 2d at 1032; ***Allison***, 928 F.2d at 141(citing ***Davis v. Nat'l Gypsum Co.***, 743 F.2d 1132 (5th Cir. 1984)).

13

¶20.    The trial court found Mississippi public policy prevents application of Iowa law.    The plaintiffs raise two public policy arguments:    (1) protection of Mississippi plaintiffs, and (2) application of Iowa law violates the settled rule in Mississippi of viewing the term "accident" based on its "effect" and not on its "cause".    We find the plaintiffs' arguments without merit.

¶21.    Courts of this state will not give effect to the substantive law of another state if to do so would be "offensive to the deeply ingrained or strongly felt public policy of the state." *Boardman*, 470 So. 2d at 1038.    Every piece of legislation enacted by the Legislature is a reflection of the public policy of Mississippi.    This Court recognizes that the laws of other states sometimes conflict with Mississippi law.    Conflict between the law of our state and another state does not itself mean that the foreign law is so offensive that it must be set aside. *Id*.

¶22.    We have found only two examples of another state's law which were offensive to Mississippi's deeply ingrained public policy.    The first involved application of Louisiana's contributory negligence statute as opposed to Mississippi's comparative negligence statute when it would have barred recovery to a Mississippi plaintiff.    *Mitchell*, 211 So. 2d at 514. The second involved application of Louisiana law to allow a widow and child to sue a deceased in tort.    *McNeal v. Administrator of McNeal's Estate*, 254 So. 2d 521, 524 (Miss. 1971) (abrogated by *Burns v. Burns*, 518 So. 2d 1205 (Miss. 1988)).    We have declined to find

14

offensive differences in highway safety regulations,[4] guest statutes,[5] and real property laws.[6]

¶23. The under-compensation of injured Mississippi plaintiffs is a serious concern. Nevertheless, it does not rise to the same level as does the complete, albeit sometimes arbitrary, bar of contributory negligence. The public policy, of adequate compensation to injured motorists is not strong enough to override the contracting parties' expectations of which state's substantive law will apply. *Baites*, 733 So.2d at 324.

### II. "ACCIDENT" UNDER IOWA LAW

¶24. Under Iowa law, the construction and interpretation of an insurance policy is a question of law reviewed by this Court de novo. *Am. Family Mut. Ins. Co. v. Petersen*, 679 N.W.2d 571, 575 (Iowa 2004); *Iowa Comp. Petroleum Underground Storage Tank Fund Bd. v. Farmland Mut. Ins. Co.*, 568 N.W.2d 815, 817 (Iowa 1997).

¶25. "The controlling consideration in interpreting insurance policies is the intent of the parties." *Interstate Power Co. v. Ins. Co. of North America*, 603 N.W.2d 751, 754 (Iowa 1999); *see generally, Hofco, Inc. v. Nat'l Union Fire Ins. Co.*, 482 N.W.2d 397 (Iowa 1992). To determine the parties' intent, the court looks to the language of the policy itself. *Farmland Mut. Ins. Co.*, 568 N.W.2d at 818. The court looks at the context of the provisions within the

---

[4]*Fells v. Bowman*, 274 So. 2d 109 (Miss. 1973).

[5]*Vick v. Cochran*, 316 So. 2d 242 (Miss. 1975).

[6]*Spragins v. Louise Plantation, Inc.,* 391 So. 2d 97 (Miss. 1980).

entire policy not just the specific provisions. *Kibbee v. State Farm Fire & Cas. Co.*, 525 N.W.2d 866, 868 (Iowa 1994). When the language of the policy does not define the provision, the court will use its ordinary meaning. *Farmland Mut. Ins. Co.*, 568 N.W.2d at 818. This is the meaning which a reasonable person would understand the policy to have. *Hofco,* 482 N.W.2d at 401. The understanding given to specific provisions is done only in conjunction with the purpose of the entire insurance policy. *Hein v. Am. Family Mut. Ins. Co.*, 166 N.W.2d 363, 369 (Iowa 1969).

¶26. If, after the application of these rules, a policy is subject to two reasonable interpretations it is ambiguous. *Farmland Mut. Ins. Co.*, 568 N.W.2d at 818. Ambiguity must be objectively present and not the result of a disagreement between the parties. *Kibbee*, 525 N.W.2d at 868. A provision is not ambiguous merely because it can possibly be defined in more than two ways. *Farmland Mut. Ins. Co.*, 568 N.W.2d at 818 (citing *New Castle County v. Hartford Acc. & Indem. Co.*, 933 F.2d 1162, 1193 (3d Cir. 1991), (existence of more than one dictionary definition is not the sine qua non of ambiguity; otherwise, few words would be unambiguous). A court should not strain the definition of provisions to find ambiguity in places where it does not exist. Courts should not give meaning to policy provisions which either extend or restrict coverage beyond what was intended. *Hein,* 166 N.W.2d at 366. This means that unless ambiguity is genuine, the court should interpret the policy as written, including applicable limitations and exceptions to coverage. *Id*. If ambiguity is genuine, then

16

the policy should be interpreted strictly against the insurer in favor of the insured.  *Farmland*

*Mut. Ins. Co.*, 568 N.W.2d at 818.

¶27.    There are three provisions in the policy that are applicable to the present case.  The first

states Zurich's coverage:

> Regardless of the number of covered "autos", "insureds", premiums paid, claims
> made or vehicles involved in the "accident", the most we will pay for the total
> of all damages and "covered pollution cost or expense" combined, resulting
> from any one "accident" is the Limit of Insurance for Liability Coverage shown
> in the Declarations.[7]

The second provision states Zurich's limit of liability is $ 1 million for all injuries and

damages arising out of any one "accident".  The third provision defines the term "accident", and

it is this definition which gives rise to this litigation.   The policy defines the term "accident"

as:

> All "bodily injury", "property damage" and "covered pollution cost or expense"
> resulting from continuous or repeated exposure to substantially the same
> conditions. . . .

The parties' sole claim of ambiguity is from whose perspective to view the term "accident".

¶28.    There is no uniform approach under Iowa law in choosing from whose perspective to

view a policy.  *Petersen*, 679 N.W.2d at 581.  The Iowa Supreme Court has declared it is futile

to create an all-inclusive definition of "accident"; rather it should be defined in the context of

the policy in which it is used.  *Central Bearings Co. v. Wolverine Ins. Co.*, 179 N.W.2d 443,

448 (Iowa 1970). The most relevant approaches are the perspective of the insured or the

---

[7] Quotation marks were used in this manner throughout the policy.

injured party. If viewed from the perspective of the insured, the event will be looked at as to its "cause" by the tortfeasor. Then all the collisions will be considered part of the same "accident" because they were the result of one continuing "cause". If viewed from the perspective of the injured party, the court will look to the "effect" on the injured party. Then the collisions will be considered part of different "accidents" because as to each injured party, it was not a continuing event but new and independent.

¶29. The plaintiffs argue that Iowa is an "effect" state. In support of their argument they point to three decisions of the Iowa Supreme Court. The plaintiffs contend that in *Potter*, *Central Bearings* and *Petersen*, the Iowa Supreme Court creates a focus not on the negligence that causes the injury but rather on the resultant injuries, or in other words the "effect". In *Central Bearings* the Iowa Supreme Court analyzed the term "accident" in a products-liability case and not an automobile collision. *Central Bearings*, 179 N.W.2d at 447-48. As a result *Central Bearings* is distinguishable from the present case.

¶30. We find *Potter* and *Petersen* controlling, but the plaintiffs' analysis incorrect. *Potter* lays out the perspective for courts to adopt when confronted with liability insurance contracts:

> At the outset we should note that this insurance contract is a liability policy which insures the tortfeasor, not the victim. Thus, whatever constituted an accident– absent policy language to the contrary– should be decided from the viewpoint of the tortfeasor.

*Potter*, 330 N.W.2d at 265. In *Potter,* the insured accidentally injured a third party, after intentionally severing the brake line in her own car. The court reasoned it was an accident, despite her intentional actions, because her sole intent was to injure herself and not others.

18

Viewed from her (the insured's) perspective, the collision with another driver was an accident because it was not intended.

¶31. In *Petersen*, an uninsured motorist case, the court laid out a distinction and rationale for viewing liability insurance contracts from the perspective of the insured. *Petersen*, 679 N.W.2d at 581. Even though the court in *Petersen* adopts the "effect" perspective, the rationale is instructive:

> The rationale for our general tendency to view an accident from the viewpoint of the tortfeasor in the case of a liability policy is found in the fact that liability policies provide insurance for the tortfeasor, not the victim. To the contrary, UM (uninsured motorist) coverage provides insurance to the victim, not the tortfeasor.

*Id.* The purpose of the uninsured motorist statute is to ensure minimum compensation for an injured victim, and therefore alters the underlying intent of the parties. *Id*. at 578-79. Uninsured motorist coverage is first-party coverage and provides no benefit to the tortfeasor; rather, the tortfeasor remains liable for reimbursement to the insurance company providing compensation. *Id*. at 578. A liability policy provides third-party coverage, which serves to indemnify the insured against the injured third party. In both cases the party from whose perspective the court is viewing the event is the "truly" insured party. *Id*. at 581. That is the party who will be covered by the insurance company.

¶32. We find that under Iowa law, the lack of the phrase "from the insured's perspective" does not make a provision ambiguous. Under Iowa law, the court will customarily view the provisions of a liability policy from the perspective of the insured party. Under this view, the

19

events of June 20, 2002, were the result of one continuing exposure. The actions of driver McCrary set in motion a chain reaction, which resulted in injuries from exposure to substantially the same condition. Under the definition in the Truckers Policy, this means that the separate collisions were part of one "accident."

## CONCLUSION

¶33. We hold that the trial court erred in applying Mississippi law to the Zurich contract. Therefore, we reverse the trial court's decision and remand this case to the Covington County Circuit Court with instructions to apply Iowa law to the meaning of "accident." Viewed from the perspective of the insured, West Side, the entire series of collisions consisted of only one "accident". Therefore, the limit of Zurich's liability is $ 1 million.

¶34. **REVERSED AND REMANDED.**

**SMITH, C.J., WALLER, P.J., CARLSON AND DICKINSON, JJ., CONCUR. EASLEY AND GRAVES, JJ., DISSENT WITHOUT SEPARATE WRITTEN OPINION. DIAZ AND RANDOLPH, JJ., NOT PARTICIPATING**.