# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2016-IA-01060-SCT

*TARINIKA SMITH, INDIVIDUALLY AND ON BEHALF OF KAYDEN JOHNSON, DECEASED, SHELENA AUSTIN PREWITT, NATURAL MOTHER AND NEXT FRIEND OF XAVIER AUSTIN, A MINOR, JAKILA MARTIN, A MINOR, MARLO WATKINS, A MINOR, AND HELEN YANCY, A MINOR, LINDA CUNNINGHAM, GENERAL GUARDIAN AND NEXT FRIEND OF TREVIN MAYS, A MINOR, AND JERKISHA MAYS, A MINOR, CHRISTINE MAGEE, NATURAL MOTHER AND NEXT FRIEND OF MONSHANNA WESTON, BRENDA WOODARD, NATURAL MOTHER AND NEXT FRIEND OF BRENAE WOODARD, A MINOR, ANGELA CRAFT, NATURAL MOTHER AND NEXT FRIEND OF DEARYELL CRAFT, A MINOR, KAYTANA DILLARD, NATURAL MOTHER AND NEXT FRIEND OF RONISHA DILLARD, A MINOR, JERMAINE DILLARD, A MINOR, AND QUASHOUNTA DILLARD, A MINOR*

*v.*

*CHURCH MUTUAL INSURANCE COMPANY AND ADLAI JOHNSON*

| | |
|---|---|
| DATE OF JUDGMENT: | 10/24/2016 |
| TRIAL JUDGE: | HON. JOHN KELLY LUTHER |
| TRIAL COURT ATTORNEYS: | DRAYTON D. BERKLEY |
| | HARDIN CHASE PITTMAN |
| | MARGARET ZIMMERMAN SMITH |
| | PAUL NORMAN DAVIS |
| | D. REID WAMBLE |
| | MATTHEW RYAN MACAW |
| COURT FROM WHICH APPEALED: | MARSHALL COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANTS: | DRAYTON D. BERKLEY |

ATTORNEYS FOR APPELLEES:      MARGARET ZIMMERMAN SMITH
                              PAUL NORMAN DAVIS
                              HARDIN CHASE PITTMAN
NATURE OF THE CASE:           CIVIL - PERSONAL INJURY
DISPOSITION:                  AFFIRMED IN PART; REVERSED IN PART
                              AND REMANDED - 08/02/2018
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

**EN BANC.**

**RANDOLPH, PRESIDING JUSTICE, FOR THE COURT:**

¶1.    The Marshall County Circuit Court entered an order dismissing Adlai Johnson from the suit for Plaintiffs' failure to timely serve him.[1] Church Mutual Insurance Company ("Church Mutual") then moved to have the trial court declare that Tennessee substantive law controlled the case. After the trial court so declared, Church Mutual moved for summary judgment based on Tennessee law prohibiting direct actions against insurers for uninsured motorist ("UM") claims. The trial court then entered summary judgment in favor of Church Mutual. Plaintiffs seek interlocutory review of all three rulings. We find no error in the dismissal of Johnson for Plaintiffs' failure to serve. We further find no error with the trial court applying Tennessee law to determine whether the contract provided UM coverage to Plaintiffs. However, we find that the trial court erred in applying Tennessee substantive law. We reverse those judgments of the Marshall County Circuit Court and remand for proceedings consistent with this opinion.

---

    [1] Johnson filed a separate suit against Smith and Mt. Vernon, which drew a counterclaim. That suit also was filed in Marshall County and later was consolidated with this suit. Neither party has made that suit part of this appeal.

2

## STATEMENT OF FACTS AND PROCEDURAL HISTORY

¶2. On April 28, 2013, Tarinika Smith and twelve minor children (collectively Plaintiffs) were involved in an automobile accident with a vehicle driven by Adlai Johnson.[2] Smith was operating a passenger van owned by Mount Vernon Missionary Baptist Church (Mt. Vernon), located in Rossville, Tennessee, which was transporting the children. The accident occurred in Marshall County, Mississippi. At the time of the collision, Smith was pregnant. Plaintiffs and Johnson all are Tennessee residents.

¶3. However, Church Mutual's principal place of business is in Wisconsin. Church Mutual issued a Commercial Automobile Policy to Mount Vernon, insuring a fifteen-passenger church van and a twelve-passenger church van. The agent for the policy was located in Brentwood, Tennessee. Although the full policy was not provided by either party, portions of the commercial auto policy, including the Business Automobile Declarations and the Tennessee Uninsured Motorists Coverage Endorsement, were included. The policy limits were $1,000,000 in liability, $5,000 in medical payments, $1,000,000 in uninsured/underinsured motorist coverage, and actual cash value or cost of repair, whichever is less, for both comprehensive and collision damage. Although the Tennessee Uninsured Motorists Coverage Endorsement was provided, the named insured, effective date, authorized representative, and schedule of bodily injury portions were left blank.

¶4. The Tennessee Uninsured Motorists Coverage Endorsement reads in pertinent part:

   A. Coverage

_____

[2] Johnson was insured by USAA, so claims advanced are underinsured motorist (UIM) claims.

3

1. We will pay all sums the "insured" is legally entitled to recover as compensatory damages from the owner or driver of an "uninsured motor vehicle." The damages must result from "bodily injury" sustained by the "insured" or "property damage" caused by an "accident." The owner's or driver's liability for these damages must result from the ownership, maintenance, or use of the "uninsured motor vehicle."

2. With respect to damages resulting from an "accident" with a vehicle described in Paragraph **(2)** of the definition of "uninsured motor vehicle," we will pay under this coverage only if **a.** or **b.** below applies:

   a. The limit of any applicable liability bonds or policies have been exhausted by payments of judgments or settlements; or

   b. A tentative settlement has been made between the "insured" and the insurer of an owner or operator of a vehicle described in Paragraph **(2)** of the definition of "uninsured motor vehicle" and we have been given written notice of such tentative settlement as described in Paragraph **E.4.b.**

That portion of the policy further declares that an "insured" is "anyone 'occupying' a covered 'auto. . . .'" None of the exclusions listed therein applies.

¶5. On June 15, 2015, Plaintiffs filed suit against Johnson and Church Mutual, alleging Johnson caused the accident. Plaintiffs sought damages for various injuries. Plaintiff Smith additionally sought recovery for the wrongful death of her "unborn quick child." On June 16, 2015, Plaintiffs sent to Johnson, via U.S. certified mail, an envelope with the circuit court's process for service on him. It was not until August 11, 2015, however, that Plaintiffs' counsel received notice from the U.S. Postal Service that the envelope had been returned undelivered and marked "unclaimed." As a result, Plaintiffs again attempted service on Johnson in September 2015, but learned in February 2016 that service had failed a second time. And so, on March 14, 2016, Plaintiffs, via a process server, tried to serve Johnson a third time.

4

Plaintiffs' third attempt ultimately was successful, with Johnson being served on March 28, 2016 – 287 days after the filing of Plaintiffs' complaint.

¶6.     In response to Plaintiffs' suit, Johnson moved to be dismissed on April 29, 2016, citing Plaintiffs' failure to timely serve him within the 120-day period prescribed by Rule 4(h) of the Mississippi Rules of Civil Procedure. Plaintiffs opposed Johnson's motion and argued for an extension of time to serve him properly. Plaintiffs offered a variety of reasons why Johnson was served beyond Rule 4(h)'s 120-day period – specifically, Plaintiffs allocated fault to both their chosen process server and Johnson. Plaintiffs, however, conceded that they were not made aware service had failed through their server until February 2016, which prompted their March 14, 2016, attempt. Following argument on Johnson's motion, the circuit court granted the motion under Rule 4(h) and dismissed Johnson without prejudice.

¶7.     In June 2016, Church Mutual moved to declare Tennessee substantive law controlled this action. Church Mutual argued that, aside from the location of the accident, Mississippi had no contacts with the parties or subject matter of the action. Therefore, choice-of-law principles required Tennessee law to be applied to the action.[3]

---

[3] This motion was inconsistent with Church Mutual's Answer, in which it sought numerous protections provided by Mississippi law as part of its Affirmative Defenses, including Mississippi Code Sections 85-5-7, 11-7-15, 11-1-69, 11-1-60, and 11-1-65.

5

¶8.     The circuit court granted Church Mutual's motion and held that Tennessee substantive law would govern all parties' claims and defenses, save for Mississippi's "[R]ules of the [R]oad."[4] The circuit court specifically held:

> This case arises from an automobile accident that occurred in Marshall County, Mississippi on April 28, 2013. The location of the accident was on Highway 72, just south of the Tennessee border. All parties to this action are domiciled or reside in Tennessee, with the exception of Church Mutual Insurance Company, whose principal place of business is in Wisconsin. Church Mutual insured the van driven by Plaintiff Smith. The insurance policy was negotiated in Tennessee and was to be substantially performed in Tennessee.
>
> This Court finds Tennessee law controls *plaintiffs' contractual claims* against Church Mutual. The place of contracting as well as the place of negotiating the contract was in Tennessee. The insured automobile was principally garaged in Tennessee. This Court finds the place of performance of the contract was substantially in Tennessee. Therefore, under the Restatement (Second) of Conflict of Laws sections 188 and 193, this Court finds Tennessee law controlling.
>
> This Court finds Tennessee law controlling as to *plaintiffs' claims of negligence*. Tennessee is the common domicile of the plaintiffs and Defendant Johnson. No party to this action is domiciled or resides in Mississippi. Based on the facts presented to the Court, this Court finds Tennessee has the most substantial relationship with the parties involved. While the Court recognizes the place of injury is Mississippi, this Court finds that fact alone is not determinative as to which state's law governs this dispute. *See **Mitchell v. Craft***, 211 So. 2d 509 (Miss. 1968); Restatement (Second) of Conflict of Laws § 6. This Court finds Tennessee laws controlling as to *tort claims and recovery*, and those *Tennessee laws are not repugnant* to the laws and policies of Mississippi. Regarding any issues involving Mississippi's [R]ules of the [R]oad, this Court finds Mississippi law is controlling. *See **Fells v. Bowman***, 274 So. 2d 109 (Miss. 1979).

---

[4] Whether Mississippi's Rules of the Road apply is a nonissue, as no party contests the circuit court's ruling in that respect.

In conclusion, the Court finds Tennessee law to be the proper choice of law as to plaintiffs' *claims of negligence* and as to *any contractual claims* against Church Mutual.

(Emphasis added.)

¶9. Following the trial court's finding that Tennessee law would apply to Plaintiffs' suit and because Johnson previously had been dismissed from the underlying suit, Church Mutual moved for summary judgment, arguing that Tennessee law did not allow Plaintiffs to bring a direct action against a UM carrier, absent specific circumstances. The circuit court agreed, and on October 24, 2016, dismissed all Plaintiffs' claims against Church Mutual without prejudice.

¶10. Plaintiffs sought interlocutory relief from this Court. Specifically, Plaintiffs appealed the circuit court's orders dismissing Johnson from the suit and finding Tennessee substantive law controlling, before granting summary judgment to Church Mutual. This Court granted Plaintiffs interlocutory review and stayed all further proceedings of the circuit court.

**STANDARD OF REVIEW**

¶11. "The standard of review for a trial court's grant or denial of a motion to dismiss is de novo." ***Long v. Vitkauskas***, 228 So. 3d 302, 304 (Miss. 2017). As to issues of service of process, this Court reviews the trial court's findings of fact for an abuse of discretion. ***Id.*** at 304. And for questions of law, such as which state's law applies to issues before this Court, our standard of review is de novo. ***McAdams v. Perkins***, 204 So. 3d 1257, 1261 (Miss. 2016).

ANALYSIS

**I.     Dismissal of Adlai Johnson**

¶12.    Rule 4(h) of the Mississippi Rules of Civil Procedure reads:

If a service of the summons and complaint is not made upon a defendant within 120 days after the filing of the complaint and the party on whose behalf such service was required cannot show good cause why such service was not made within that period, the action shall be dismissed as to that defendant without prejudice upon the court's own initiative with notice to such party or upon motion.

M.R.C.P. 4(h).

Mississippi Rule of Civil Procedure 4(h) mandates that a complaint be dismissed if service of process is not effected within 120 days of the filing of the complaint and good cause cannot be shown for failure to do so. The rule has been interpreted to provide that "a plaintiff must serve a defendant with process within 120 days *or* show good cause why service was not made." ***Watters v. Stripling***, 675 So. 2d 1242, 1243 (Miss. 1996) (emphasis added). The rule has also been interpreted to require that, if the defendant is not served within 120 days, the plaintiff must either refile the complaint before the statute of limitations ends or show good cause; otherwise, dismissal is proper. ***Id.*** at 1244. "To establish 'good cause' the plaintiff must demonstrate 'at least as much as would be required to show excusable neglect, as to which simple inadvertence or mistake of counsel or ignorance of the rules usually does not suffice.'" ***Peters v. United States***, 9 F.3d 344, 345 (5th Cir. 1993) (quoting ***Systems Signs Supplies v. U.S. Dep't of Justice***, 903 F.2d 1011, 1013 (5th Cir. 1990) (cited favorably in ***Bang v. Pittman***, 749 So. 2d 47, 51 (Miss. 1999), and ***Watters***, 675 So. 2d at 1243)).

***Webster v. Webster***, 834 So. 2d 26, 27-28 (Miss. 2002).

¶13.    The record reflects that Plaintiffs filed their complaint on June 15, 2015. Under the rule, the 120-day period to effectuate service on Johnson expired on October 13, 2015. Because service was not made upon Johnson by October 13, 2015, Plaintiffs failed to satisfy

the first prong of the Rule 4(h) inquiry. As a result, Plaintiffs' only recourse under Rule 4(h) was to establish "good cause." *See* M.R.C.P. 4(h).

¶14.   This Court has held that "good cause is likely (but not always) to be found when the plaintiff's failure to complete service in timely fashion is a result of the conduct of a third person, typically the process server." ***Holmes v. Coast Transit Auth.***, 815 So. 2d 1183, 1186 (Miss. 2002) (citations omitted). A plaintiff also may show "good cause" if "the defendant has evaded service of process or engaged in misleading conduct, the plaintiff has acted diligently in trying to effect service or there are understandable mitigating circumstances. . . ." ***Id.***

¶15.   In an attempt to establish good cause, Plaintiffs argue that Johnson willfully evaded service. But Plaintiffs provide no evidence proving his alleged evasion, and the record is devoid of the same. Moreover, Plaintiffs were not diligent in serving Johnson, for Plaintiffs concede that they took no action as to the status of their service of process between the first week of October 2015 and February 2016–approximately four months. This four-month period extended beyond the original 120-day period. Due to Plaintiffs' lack of diligence, lack of proof of Johnson's willful evasion, and lack of any other mitigating circumstances warranting relief, we conclude that they failed to establish "good cause."

¶16.   Additionally, Plaintiffs did not file their motion for extension of time until May 20, 2016–some 220 days after the expiration of their 120-day period, and 340 days after the filing of their complaint. Plaintiffs' motion for an enlargement of time to serve Johnson was made only *after* Johnson had filed his motion to dismiss Plaintiffs' claims against him on April 29,

9

2016. The circuit court analyzed Plaintiffs' claims under Rule 6(b) and denied their motion for an extension. Pursuant to Rule 6(b):

> When by these rules or by notice given thereunder or by order of court an act is required or allowed to be done at or within a specified time, the court for cause shown may at any time in its discretion . . . upon motion made after the expiration of the specified period permit the act to be done where failure to act was the result of excusable neglect. . . .

M.R.C.P. 6(b). "This Court has held that the standards for deciding whether a plaintiff has demonstrated 'good cause' under Rule 4(h) and 'excusable neglect' under Rule 6(b)(2) are virtually identical." ***Collins v. Westbrook***, 184 So. 3d 922, 932 (Miss. 2016) (citing ***Watters***, 675 So. 2d at 1244). Finding no good cause, we likewise find no excusable neglect. We find no error as to this ruling and affirm the dismissal of Johnson without prejudice.

## II.     Choice of Law

¶17.    The following principles are to be considered in our choice-of-law analysis:

> First, the law of a single state does not necessarily control every issue in a given case. We apply the center of gravity test to each question presented, recognizing that the answer produced in some instances may be that the law of this state applies and on other questions in the same case the substantive law of another state may be enforceable. We note that ***Fells v. Bowman***, 274 So. 2d 109 (Miss. 1973) has recognized that this Court is not necessarily required "to apply the law of a single state to every facet of the case." 274 So. 2d at 112. *See also* ***Vick v. Cochran***, 316 So. 2d 242, 246 (Miss. 1975).

> Second, we recognize that there will be cases where, applying the center of gravity doctrine, we might conclude in the first instances that the law of another state should be applied. Where that law is contrary to the deeply ingrained and strongly felt public policy of this state, however, we have recognized that we may nevertheless apply and enforce this state's positive substantive law. ***McNeal v. Administrator of Estate of McNeal***, 254 So. 2d 521, 524 (Miss. 1971).

***Boardman v. United Servs. Auto. Ass'n***, 470 So. 2d 1024, 1031 (Miss. 1985).

¶18.    In today's case, the trial court determined that Tennessee law would apply to UM coverage, tort claims, and recovery, including "plaintiffs' claims of negligence." In contrast, the trial court also found that any issues involving Mississippi's Rules of the Road would be controlled by Mississippi law.  The trial court found that Tennessee laws were not repugnant to the laws and policies of Mississippi and that Tennessee was the proper choice of law for all but the Mississippi Rules of the Road. The trial court erred in concluding that Tennessee law would apply to "tort and recovery claims" and Plaintiffs' negligence claims, for such negligence would be based on a violation of Mississippi's Rules of the Road. We reverse and remand for proceedings consistent with this opinion.

### A.    Uninsured Motorist Coverage

¶19.    The precedent set by this Court dictates that Tennessee law should apply to the UM insurance coverage under the automobile insurance policy in this dispute. *See **O'Rourke v. Colonial Ins. Co.***, 624 So. 2d 84 (Miss. 1993), and ***Boardman***, 470 So. 2d 1024. Both the place of contracting and the place of negotiation were in Tennessee. The contract was performed substantially in Tennessee. The vehicles involved were garaged principally in Tennessee. And the domicile, residence, and place of business of the parties is Tennessee. Thus, Tennessee's law applies as to whether the Plaintiffs are insureds under the policy and, if so, the limits of liability.[5] Church Mutual has raised no coverage issues.

¶20.    Nothing in this commercial automobile policy excludes these Plaintiffs from recovering damages from an uninsured/underinsured motorist, provided they prove their case.

---

[5] *See **O'Rourke***, 624 So. 2d 84, and ***Boardman***, 470 So. 2d 1024.

11

The policy reads that Church Mutual is obligated to pay for an insured's injuries, and no exclusions to that obligation to pay were applicable. Moreover, policy exclusions were not claimed by Church Mutual and were not before the trial court. Church Mutual's argument is that Tennessee law should apply to all issues – no direct action against the UM carrier and no compensable damages as to Smith – not that all Plaintiffs were not insured under the policy.

¶21.    The distinction in substantive tort law does not control recovery under the policy. The policy language controls recovery if Plaintiffs prove that Johnson violated the rules of the road and that violation was a cause of the accident and their damages. Nothing in the policy excludes Plaintiffs from the recovery sought, once violation and causation are proven. Church Mutual has presented no evidence that the UM policy is invalid when the vehicle is operated in states other than Tennessee. No matter if an accident occurred in Maine or Florida, Washington, Southern California, or Mississippi, Plaintiffs are entitled to recover damages (*supra* ¶ 4) under the policy, provided they meet the policy requirements. The relief Church Mutual is seeking is not provided for in the policy. What could prevent recovery is not the policy, but Tennessee's substantive law. However, nothing in the policy states that Tennessee statutory law controls tort claims and recovery.

B.    **Conflicting Laws**

¶22.    An actual conflict exists between the substantive tort laws of Mississippi and Tennessee. Under Mississippi law, a wrongful-death claim may be brought on behalf of a "quick" fetus, while Tennessee law permits a wrongful-death claim only for fetuses deemed

12

"viable" at the time of injury. *Compare* Miss. Code Ann. § 11-7-13 (Rev. 2004), *with* Tenn. Code § 20-5-106(d) (2009 & Supp. 2017). Additionally, Mississippi applies a pure comparative-fault scheme, while Tennessee uses a modified comparative-fault scheme. *Compare* Miss. Code Ann. § 11-7-15 (Rev. 2004), *with* **McIntyre v. Balentine**, 833 S.W.2d 52, 57 (Tenn. 1992) (abrogating contributory-negligence scheme and adopting "a system of modified comparative fault").

¶23.    A primary consideration in determining the applicable state's law is the "advancement of the forum's governmental interests." **Mitchell v. Craft**, 211 So. 2d 509, 514 (Miss. 1968).

> We will assume that a case is to be governed by the law of the forum unless it is expressly shown that a different law applies, and in case of doubt, a court will naturally prefer the laws of its own state. Moreover, a forum state will not favor application of a rule of law repugnant[6] to its own purposes, and forum law should presumptively apply unless it appears that non-forum contacts are of greater significance.

*Id.* at 512. "Courts of this state will not give effect to the substantive law of another state if to do so would be 'offensive to the deeply ingrained or strongly felt public policy of the state.'" **Zurich American Ins. Co. v. Goodwin**, 920 So. 2d 427, 437 (Miss. 2006) (quoting **Boardman**, 470 So. 2d at 1038).

### 1.    *Wrongful-Death Claims*

¶24.    Mississippi has declared a governmental interest in the dignity and intrinsic worth of the unborn and has bestowed the status of a person when the unborn shows some evidence of life within the womb. Separately, Mississippi has declared that the unborn also have

---

[6] Webster's defines "repugnance" as "the relationship of contradictory terms: inconsistency." *Repugnance*, Webster's II New College Dictionary 942 (2001).

extrinsic, economic value. If Tennessee law is applied, a remedy for a loss of this value is unavailable in this wrongful-death case.

¶25.    This Court has held that a mother is entitled to bring a wrongful-death claim for the death of a nonviable fetus. *66 Fed. Credit Union v. Tucker*, 853 So. 2d 104 (Miss. 2003). Prior to *Tucker*, Mississippi's Wrongful Death Act created a cause of action for "the wrongful death of an unborn child where the fetus was *viable* at the time of death." *Id.* at 108 (citing *Sweeney v. Preston*, 642 So. 2d 332 (Miss. 1994); *Terrell v. Rankin*, 511 So. 2d 126 (Miss. 1987); *Rainey v. Horn*, 221 Miss. 269, 72 So. 2d 434 (1954)) (emphasis added). In *Tucker*, this Court set forth the difference between "viable" and "quick":

> Along with the right to recover for prenatal injuries came questions about the required stage of development of the child when injured. Those questions asked whether the child had to be "quick" in its mother's womb, or whether the child had to be viable, or whether the child had to survive birth. A "quick child" is defined as a child "that has developed so that it moves within the mother's womb." Black's Law Dictionary 1415 (4th ed.1968). "Viable" is a "term applied to a newly-born infant, and especially to one prematurely born, which is not only born alive, but in such a state of organic development as to make possible the continuments of its life." *Id.* at 1737.

*Tucker*, 853 So. 2d at 107. After examining the criminal statues, which had been amended in 2000 to add the language "willful killing of an unborn quick child," *see* 2000 Miss. Laws 337 (H.B. 923), this Court removed "viability" and adopted "unborn quick child" as the demarcation line for recovery under Mississippi's Wrongful Death Act.

> The purposes of the wrongful death statute are to prevent the wrongful termination of life and provide the beneficiary with compensation for the loss of companionship and society of the deceased, the pain and suffering of the deceased between injury and death, and punitive damages. *See McGowan v. Estate of Wright*, 524 So. 2d 308, 311 (Miss. 1988). We decline to draw a line at viability. The wrongful death statute creates a general cause of action and

14

designates its beneficiaries without specifying whether a fetus is considered a "living" "individual" or "person" whose death could give rise to such an action. Finding pertinent language in Miss. Code Ann. § 97-3-37, we maintain consistency with our criminal statute's express limitation that "the willful killing of an unborn *quick* child, by an injury to the mother of such child, which would be murder if it resulted in the death of the mother, shall be manslaughter." Miss. Code Ann. § 97-3-37 (emphasis added).

. . .

Viability is not the appropriate criterion to determine whether the unborn is a "person" within the context of the wrongful death statute. . . . In truth, a viability standard is arbitrary and all too often results in an injustice when a non-viable fetus would have most likely survived, but for the intervening wrongful, tortious conduct of another. Then, to make matters worse, the wrongdoer goes unpunished and totally escapes liability for inflicting fatal injuries. . . . Following the example of the Supreme Court of Georgia and looking to our own Legislature's reasoning in this area, we adopt the standard as found in our criminal statute, Miss. Code Ann. § 97-3-3, which will permit recovery for the death of a child that is "quick" in the womb. This standard will promote the purpose of our wrongful death statute in preventing the wrongful termination of life. This holding will ensure that all tortfeasors are held accountable for injuries they inflict. Problems with proof and causation are no greater in this type of case than in many other tort claims.

*Tucker*, 853 So. 2d at 109-10, 114.

¶26. Soon after this Court held that a wrongful-death cause of action existed for an unborn, *quick* child, the Legislature amended the Wrongful Death Act to reflect its approval of *Tucker*. *See* 2004 Miss. Laws 515 (H.B. 352).[7] The Legislature further amended the criminal

---

[7]SECTION 1. Section 11-7-13, Mississippi Code of 1972, is amended as follows:

11-7-13. Whenever the death of any person *or of any unborn quick child* shall be caused by any real, wrongful or negligent act or omission, or by such unsafe machinery, way or appliances as would, if death had not ensued, have entitled the party injured or damaged thereby to maintain an action and recover damages in respect thereof, or whenever the death of any person *or of any unborn quick child* shall be caused by the breach of any warranty, express or implied, of the purity or fitness of any foods, drugs, medicines,

statutes to define the term "human being" as "an unborn child at every stage of gestation from conception until live birth and the term 'unborn child' means a member of the species homo sapiens, at any stage of development, who is carried in the womb. . . ." *See* 2004 Miss. Laws 521 (S.B. 2869). Mississippi's public policy and stated governmental interest leave no doubt that viability is not the demarcation line for an "unborn, quick child."

¶27. Mississippi's law designating when the loss of an unborn becomes compensable conflicts with Tennessee's law. Tennessee's law mirrors Mississippi's prior law. Tennessee wrongful-death claims allow recovery only for unborn children deemed "*viable*" at the time

---

beverages, tobacco or any and all other articles or commodities intended for human consumption, as would, had the death not ensued, have entitled the person injured or made ill or damaged thereby, to maintain an action and recover damages in respect thereof, and such deceased person shall have left a widow or children or both, or husband or father or mother, or sister, or brother, the person or corporation, or both that would have been liable if death had not ensued, and the representatives of such person shall be liable for damages, notwithstanding the death, and the fact that death was instantaneous shall in no case affect the right of recovery. The action for such damages may be brought in the name of the personal representative of the deceased person *or unborn quick child* for the benefit of all persons entitled under the law to recover, or by widow for the death of her husband, or by the husband for the death of the wife, or by the parent for the death of a child *or unborn quick child*, or in the name of a child, or in the name of a child for the death of a parent, or by a brother for the death of a sister, or by a sister for the death of a brother, or by a sister for the death of a sister, or a brother for the death of a brother, or all parties interested may join in the suit, and there shall be but one (1) suit for the same death which shall ensue for the benefit of all parties concerned, but the determination of such suit shall not bar another action unless it be decided on its merits. Except as otherwise provided in Section 11-1-69, in such action the party or parties suing shall recover such damages allowable by law as the jury may determine to be just, taking into consideration all the damages of every kind to the decedent and all damages of every kind to any and all parties interested in the suit.

2004 Miss. Laws 515 (H.B. 352).

of death. *See* Tenn. Code § 20-5-106(d). Smith's Complaint seeks damages for the loss of a *quick* child. Under Tennessee law, Smith must prove *viability*. Thus, under Tennessee law, no recovery can be had absent that proof, which Mississippi does not require. Tennessee's law is contrary to Mississippi's stated public policy and governmental interest. *See* ***Zurich***, 920 So. 2d at 437.

¶28. When a person steps foot in this State, he not only is bound to abide by, but is also burdened with Mississippi law, which the trial court recognized in applying Mississippi's Rules of the Road. Likewise, persons are entitled to the benefits that come with those burdens, including any rights provided by Article 3 of our State Constitution. The privileges afforded by our Bill of Rights include Article 3, Section 24,[8] which specifically provides a remedy for all injuries. Wrongful-death beneficiaries of an unborn, quick child are afforded a right to a remedy for their injury. Such a deprivation of that right is wholly repugnant to the laws of this State.

### 2. *Comparative Fault*

¶29. Equally important to injured persons is the right to recover damages for their injuries. Mississippi has had a comparative-negligence statute since 1910, when the Legislature determined that contributory negligence no longer would be a complete bar for recovery. *See*

---

[8] Pursuant to Article 3, Section 24 of our Mississippi Constitution:

All courts shall be open; and *every person for an injury done him* in his lands, goods, person, or reputation, *shall have remedy by due course of law*, and right and justice shall be administered without sale, denial, or delay.

Miss. Const. art 3, § 24.

Miss. Code Ann. § 11-7-15 (Rev. 2004).[9] "Comparative negligence represents a long-established, salutary and worthwhile policy of this State." *Mitchell*, 211 So. 2d at 513.

> The first comparative negligence statute of general applicability in this country was enacted in Mississippi in 1910. . . . The statute creates what might be called true comparative negligence in that it rejects the requirement . . . that the plaintiff's negligence be less than that of the defendant. . . . [T]he Mississippi rule presents comparative negligence in its purest and most comprehensive form. . . .

Peck, C.J., *Comparative Negligence and Automobile Liability Insurance*, 58 Mich. L. Rev. 689, 702-703 (1960).

¶30.    Since 1910, forty-six states have adopted some form of comparative negligence. Fifteen states, beginning with Mississippi, adopted pure comparative fault, which allows an injured person  to recover damages, reduced by the percentage of fault attributed to that person. Twenty states permit injured persons to recover damages reduced by their percentage of fault only if their negligence does not exceed that of the defendant (the fifty-percent rule). Nine permit recovery only if plaintiff's negligence is less than that of the defendant (the forty-nine-percent rule), which has been adopted by Tennessee. The remaining two states have "slight/gross" negligence systems under which, only if the plaintiff's fault is greater than slight, is it barred from recovery. *See McIntyre v. Balentine*, 833 S.W.2d 52 (Tenn. 1992).

---

[9] Church Mutual specifically pleaded for application of Mississippi's pure-comparative negligence statute in its affirmative defenses.

18

¶31. Tennessee law on this subject is a century behind Mississippi in certain accidents, and could significantly affect the parties before us.[10] Tennessee's modified comparative-negligence statute rejects Mississippi's deeply ingrained public policy and allows recovery only if an injured party's negligence is less than that of the defendant. The percentage of negligence, if any, of either is unknown to us. This is a jury question to be determined by proof of a violation(s) of Mississippi's Rules of the Road. In a number of cases, applying Tennessee's modified comparative-negligence law could result in no recovery to a severely injured person.

¶32. To prefer and apply Tennessee laws, which are repugnant to the laws of this State, is "offensive to the deeply ingrained or strongly felt public policy of the state." *Zurich*, 920 So. 2d at 437. The trial court erred when it concluded Tennessee's laws did not violate the public policy or governmental interest of this State. Given the specific facts of this case, Mississippi substantive tort law provides Tarinika Smith and the wrongful-death beneficiaries of Kayden Johnson a remedy. Applying Tennessee law to the same facts, they are without remedy for the death of an unborn quick child. Furthermore, dependent upon the jury's allocation of fault determined by Mississippi's pure comparative negligence and Rules of the Road, not only may Plaintiffs be deprived of a remedy for their personal injuries, but Adlai Johnson as well.

C. **Direct Action Against UM Carrier**

---

[10] In a separate action, Johnson sued Smith, and Smith counterclaimed. Under Tennessee law, a jury could find each to be equally at fault, which would prevent recovery for either.

¶33. Mississippi allows a direct action suit against a UM carrier, and a suit against the uninsured motorist is not required. *See Vaughn v. State Farm Mut. Auto. Ins. Co.*, 445 So. 2d 224, 226 (Miss. 1984); *Harthcock v. State Farm Mutual Auto. Ins. Co.*, 248 So. 2d 456 (Miss. 1971); *Farned v. Aetna Cas. & Surety Co.*, 263 So. 2d 790 (Miss. 1972); *Hodges v. Canal Ins. Co.*, 223 So. 2d 630 (Miss. 1969). Tennessee's UM statutes, unlike Mississippi's, generally bar direct actions against insurers for UM benefits. *See Griffin v. Shelter Mut. Ins. Co.*, 18 S.W.3d 195, 199 (Tenn. 2000).

¶34. Tennessee's exception to its general bar, Section 56-7-1206(d) of the Tennessee Code, provides:

> In the event that service of process against the uninsured motorist, which was issued to the motorist's last known address, is returned by the sheriff or other process server marked, "Not to be found in my county," *or words to that effect*, . . . the service of process against the uninsured motorist carrier, pursuant to this section, shall be sufficient for the court to require the insurer to proceed as if it is the only defendant in the case.

Tenn. Code § 56-7-1206(d) (emphasis added). Although Johnson was dismissed properly from the matter for Plaintiffs' failure to timely serve him under Rule 4(h), Plaintiffs' summons was returned as "unclaimed."

¶35. Given today's holdings and the similarity between Mississippi's basic direct action law and Tennessee's exception, Church Mutual's claim of conflict of law is tenuous, at best. As the *Mitchell* Court held, we always look first to the law of the forum state, which is Mississippi. *Mitchell*, 211 So. 2d at 514. Additionally, if there is doubt, we prefer the laws of our own State. *Id.* It is hard to find error with the trial court, for the words "unclaimed" and "not found in my county" are different, but those distinctions grow much dimmer

20

because we already have held that Mississippi substantive law applies. Such a minimal distinction should not destroy Plaintiffs' action. Since there is doubt, that benefit lies with the forum state. Since this suit remains in Mississippi with the substantive law of Mississippi applying, Mississippi's direct-action law also applies.

¶36. Tennessee's general bar on direct actions does not preclude this suit. We reverse the circuit court's order granting Church Mutual summary judgment and dismissing without prejudice Plaintiffs' claims.

**CONCLUSION**

¶37. We hold that the circuit court did not err in dismissing Adlai Johnson pursuant to Mississippi Rule of Civil Procedure 4(h). However, the trial court erred in finding that Tennessee substantive law controlled Plaintiffs' claims of negligence and Plaintiffs' contract claims against Church Mutual. We reverse the trial court's order granting Church Mutual's Motion to Declare Tennessee Substantive Law Controlling and its order granting Church Mutual's Motion for Summary Judgment. We remand this case for proceedings consistent with this opinion.

¶38. **AFFIRMED IN PART; REVERSED IN PART AND REMANDED.**

**KING, COLEMAN, MAXWELL, BEAM AND CHAMBERLIN, JJ., CONCUR. ISHEE, J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION JOINED BY WALLER, C.J., AND KITCHENS, P.J.**

**ISHEE, JUSTICE, CONCURRING IN PART AND DISSENTING IN PART:**

¶39. While I agree that Johnson was properly dismissed from the underlying suit, I disagree with much of the majority's analysis regarding the conflict-of-laws issues. Specifically, I

21

find the majority's invocation of the public-policy "escape device" unwarranted. Put simply, Tennessee has the superior interest in this case—not Mississippi. Therefore, I respectfully concur in part and dissent in part with today's judgment.

## I.     Choice of Law and Conflict of Laws

¶40.    Plaintiffs argue that the circuit court erred in determining that Tennessee substantive law governed as to the parties' claims and defenses. Instead, Plaintiffs assert that Mississippi's choice-of-law principles mandate that Mississippi's substantive laws govern. I disagree and thus would affirm the circuit court's judgment as to this issue.

¶41.    "A choice[-]of[-]law analysis arises only when there is a true conflict between the laws of two states, each having an interest in the litigation." *Zurich Am. Ins. Co. v. Goodwin*, 920 So. 2d 427, 432 (Miss. 2006). In this case, a true conflict exists between the laws of Mississippi and Tennessee. Under Mississippi law, a wrongful-death claim may be brought on behalf of a "quick" fetus, whereas Tennessee law permits a wrongful-death claim only for fetuses deemed "viable" at the time of injury. *Compare* Miss. Code Ann. § 11-7-13 (Rev. 2004), *with* Tenn. Code § 20-5-106(d) (2009 & Supp. 2017). Additionally, Mississippi applies a pure comparative-fault scheme, while Tennessee utilizes a modified comparative-fault scheme. *Compare* Miss. Code Ann. § 11-7-15 (Rev. 2004), *with* **McIntyre v. Balentine**, 833 S.W.2d 52, 57 (Tenn. 1992) (abrogating contributory-negligence scheme and adopting "a system of modified comparative fault").

¶42.    Because this suit was brought in Mississippi, we apply Mississippi's choice-of-law principles. And in Mississippi, a "[c]hoice[-]of[-]law analysis involves a multi-step process."

*Zurich*, 920 So. 2d at 432. "First[,] it must be determined whether the conflicting laws are substantive or procedural." *Id.* at 433. "Regardless of the substantive law to be applied, Mississippi courts will apply their own procedural law." *Id.* "The second step in [our] choice[-]of[-]law analysis is to classify the substantive area of law" (*i.e.*, tort, contract, or property). *Id.* Once determined, Mississippi resolves true conflicts by applying the "center of gravity" doctrine, found in the *Restatement (Second) Conflict of Laws*. This is done by applying enumerated contacts from the *Restatement (Second)*'s relevant, substantive provisions. **Hancock v. Watson**, 962 So. 2d 627, 629 (Miss. 2007); *see also* **Mitchell v. Craft**, 211 So. 2d 509, 510 (Miss. 1968); *Restatement (Second) Conflict of Laws* § 145 (Am. Law Inst. 1971).

¶43.    As this Court in **Mitchell v. Craft** stated:

> The doctrine is a rule whereby the court trying the action applies the law of the place which has the *most significant relationship* to the event and parties or which, because of the relationship or contact with the event and parties, has the greatest concern with the specific issues with respect to liabilities and rights of the parties to the litigation.

*Mitchell*, 211 So. 2d at 515 (citing 15A C.J.S. *Conflict of Laws* 8(2) (1967)) (emphasis added).

¶44.    Applying the first two steps here, the Plaintiffs' claims and Johnson's defenses are substantive in nature, and sound in the area of tort.[11]  Thus, we now must apply the "center of gravity" test to determine whether Mississippi or Tennessee has the superior interest in

---

[11] Whether Tennessee's substantive law governs Plaintiffs' contractual claims against Church Mutual will be addressed separately.

23

this case, which, in turn, will determine which state's law shall apply. ***Mitchell***, 211 So. 2d

at 515.

### A. Application of the Most-Significant-Relationship Test to Plaintiffs' Tort-Based Issues

¶45.    To ascertain which state has the "most significant relationship," we look to the

language of *Restatement (Second)*'s Section 145, which provides:

> (1) The rights and liabilities of the parties with respect to an issue in tort are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence and the parties under the principles stated in § 6.[12]

> (2) Contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include:

>> (a) the place where the injury occurred,

>> (b) the place where the conduct causing the injury occurred,

>> (c) the domicile, residence, nationality, place of incorporation and place of business of the parties, and

>> (d) the place where the relationship, if any, between the parties is centered.

*Restatement (Second) Conflict of Laws* § 145.    And "rather than looking at minimum

contacts, [we focus] where the contacts are *maximized*." ***Church v. Massey***, 697 So. 2d 407,

410 (Miss. 1997) (internal quotations omitted) (emphasis added).

---

[12] "*Restatement (Second) Conflict of Laws* § 6 sets forth the general principles and factors to be considered in a choice[-]of[-]law analysis, including policy considerations, uniformity of results in the application of the analysis, and ease in application of the analysis." ***Hancock***, 962 So. 2d at 630 n.3 (emphasis added); *see also Restatement (Second) Conflict of Laws* § 6(2).

¶46. So, looking to the first two factors, the injury and the conduct causing the injury occurred in Mississippi.[13] And though the first two factors initially weigh in favor of Mississippi, this Court has made clear that the place where the injury occurred often "bears little relationship to any relevant considerations for choosing one law against another in a particular tort case." *Mitchell*, 211 So. 2d at 513. This is so especially in cases such as this one, where the collision and the conduct causing the collision are the *sole* relationship to Mississippi. That is, it was a "purely adventitious circumstance that the collision happened in [Mississippi]." *Id.*

¶47. Next, the third factor—the domicile and residence of the parties—reveals that Tennessee has the dominant interest. This is because all the parties, except for Church Mutual, are Tennessee residents. In addition, the sole witness to the collision is a Tennessee resident, and the vehicle utilized by Plaintiffs was owned by Mt. Vernon (a Tennessee church and the named insured under the Church Mutual policy at issue, which was issued and delivered in Tennessee). Referring to the Comment on Section 145(2)(c), it provides that, "[t]he state where these contacts are grouped is particularly likely to be the state of the applicable law . . . [and] [t]his state may also be the state of the applicable law when conduct and injury occurred in a place that is fortuitous and bears little relation to the occurrence and

_____

[13] Though the conduct causing the alleged wrongful death of Smith's fetus occurred in Mississippi, the actual injury (Smith's miscarriage) occurred in Tennessee. But under *Restatement (Second)*'s Section 175, the place of the injury for a wrongful-death claim is the place of the initial injury that causes death (which here, is Mississippi), and not the place where the death occurs (Tennessee). *See Restatement (Second) Conflict of Laws* § 175.

25

the parties." *Restatement (Second) Conflict of Laws* § 145(2)(c) cmt. e.  Therefore, these contacts, taken together with the Comment's guidance, weigh entirely in favor of Tennessee.

¶48.   As for the last factor, however, I find that it does not apply in this case.  That is, the parties agree that they did not have a relationship *prior* to the collision.  Though Plaintiffs argue that the parties' relationship became "centered" in Marshall County, as that is where the collision occurred, I find this assertion unpersuasive.  As the *Restatement (Second)* provides, we are to review "the place where the relationship, *if any*, between the parties is centered." *Restatement (Second) Conflict of Laws* § 145(2)(d) (emphasis added).  But going further, the Comment to Section 145(2)(d) states that "*[w]hen* there is a relationship between the plaintiff and the defendant *and when the injury was caused by an act done in the course of the relationship*," then where the relationship is "centered" becomes a relevant contact. *Id.* cmt. e (emphasis added).  Thus, the plain language of, and official comment to, Section 145(2)(d) both provide that this particular contact will not apply in all cases—such as the case here.

¶49.   And so, I would conclude that Mississippi's choice-of-law principles require that the laws of Tennessee apply to the parties' tort-based claims and defenses in this case—absent, of course, a finding that the relevant Tennessee laws are repugnant to Mississippi's public policies.  And for clarity's sake, my conclusion that Tennessee law applies does not abrogate the circuit court's finding (and the parties' concession) that Mississippi's Rules of the Road will determine negligence—rather, Tennessee's laws should govern as to the degree of

recovery (if any) and as to Smith's wrongful-death claim, which is discussed in further detail below.

## B. Repugnance, if any, of Tennessee Laws

¶50.   As the majority articulates, "[c]ourts of this state will not give effect to the substantive law of another state if to do so would be 'offensive to the deeply ingrained or strongly felt public policy of the state.'" *Zurich*, 920 So. 2d at 437 (quoting *Boardman v. United Servs. Auto. Ass'n*, 470 So. 2d 1024, 1038 (Miss. 1985)).  Being such, "[t]his Court recognizes that the laws of other states sometimes conflict with Mississippi law[, *but] [c]onflict between the law of our state and another state does not itself mean that the foreign law is so offensive that it must be set aside.*" *Zurich*, 920 So. 2d at 437 (emphasis added).  And thus, as this Court reiterated in *Zurich*:

> We have found only two examples of another state's law which were offensive to Mississippi's deeply ingrained public policy.  The first involved application of Louisiana's contributory negligence statute as opposed to Mississippi's comparative negligence statute when it would have barred recovery to a Mississippi plaintiff.  The second involved application of Louisiana law to allow a widow and child to sue a deceased in tort.

*Id.* (internal citations omitted).

¶51.   Here, Plaintiffs assert that, because true conflicts exist between the laws of Mississippi and Tennessee, it follows that Tennessee's laws are repugnant to the laws of Mississippi.  Specifically, Plaintiffs assert as repugnant both Tennessee's wrongful-death statute and its comparative-fault scheme.  Plaintiffs, however, cite no authority supporting these specific propositions.  But even so, in light of our caselaw on these issues, I would not

27

find the Tennessee laws repugnant to Mississippi's and, therefore, Tennessee law should govern a majority of the issues in this case.

¶52.    To reiterate, Mississippi allows a wrongful-death claim be brought on behalf of a "quick" fetus, whereas Tennessee law permits wrongful-death claims for fetuses only deemed "viable" at the time of injury.  *Compare* Miss. Code Ann. § 11-7-13, *with* Tenn. Code § 20-5-106(d).  And as outlined by the majority, Mississippi's use of the term "unborn quick child" in Section 11-7-13 has been interpreted and defined by this Court as "one that has developed so that it moves within the mother's womb," but is not yet "viable."  *See 66 Fed. Credit Union v. Tucker*, 853 So. 2d 104, 110 (Miss. 2003) (adopting definition of "quick child" from criminal statute, Mississippi Code Section 97-3-37 (1972), as discussed in *Willis v. State*, 518 So. 2d 667 (Miss. 1988)).

¶53.    Tennessee, however, sets the threshold at viability—which, under its wrongful-death statute, is defined as a fetus "[having] achieved a stage of development wherein it could reasonably be expected to be capable of living outside the uterus."  Tenn. Code § 20-5-106(d).  Thus, while Tennessee maintains a heightened standard for wrongful-death claims brought on behalf of fetuses, it does not altogether bar such claims for relief.  I find this to be an important distinction.  Because Mississippi and Tennessee both allow such claims (albeit, under different standards), we should not hold that Tennessee's wrongful-death statute is repugnant, so as to violate our deeply ingrained public policies.  *See Zurich*, 920 So. 2d at 437.

28

¶54. The majority, however, does just that. But "repugnance," as defined within the conflict-of-laws context, differs from the version articulated by the majority. (*See* Maj. Op. ¶ 23) (defining repugnance as "the relationship of contradictory terms: inconsistency."). Indeed, repugnance requires more than mere inconsistencies. Rather, in this context, repugnance has been defined as violating "some fundamental principle of justice, some prevalent conception of morals, some deep-seated tradition of the common weal." ***Loucks v. Standard Oil Co. New York***, 224 N.Y. 99, 111, 120 N.E. 198 (N.Y. 1918). So, while the majority spends much time discussing the policies supporting Mississippi's wrongful-death statute, it entirely ignores Tennessee's policies—despite Tennessee's dominant interest in this case.

¶55. At bottom, Tennessee's wrongful-death statute should apply to its citizens, however unfortunate that result may be on these facts. Doing such would further the *Restatement (Second)*'s goal of fostering interstate comity, while also curbing forum shopping. Today's result, however, undermines these goals. And in doing so, the majority doubles the few, articulated policy exceptions we have long held to be so fundamental that rejection of a foreign law was justified. *See **Zurich***, 920 So. 2d at 437. But given Mississippi's weak interests in this case (no Mississippi citizens or decedents), our law simply should not apply.

¶56. As to whether Tennessee's comparative-fault scheme is repugnant to Mississippi's, I likewise cannot find such. Again, Mississippi applies a pure comparative-fault scheme, while Tennessee utilizes a modified comparative-fault scheme. *Compare* Miss. Code Ann. § 11-7-15, *with **McIntyre***, 833 S.W.2d at 57. Thus, in Mississippi, an injured party's

29

"damages shall be diminished by the jury in proportion to the amount of negligence attributable to the person injured," if any. Miss. Code Ann. § 11-7-15. But under Tennessee's modified comparative-fault rules, an injured party may recover "so long as [an injured party's] negligence remains less than the defendant's negligence." *McIntyre*, 833 S.W.2d at 57. So, under each state's scheme, an injured party may recover—up to a certain level—even when that injured party contributed to the negligent action. Comparative-negligence schemes, however, are in stark contrast to the doctrine of contributory negligence, which bars an injured party's right to recover should the party be even one percent at fault. *See generally Mitchell*, 211 So. 2d at 510.

¶57. In that vein, Plaintiffs (and the majority to an extent) rely on *Mitchell* to argue the repugnance of Tennessee's fault scheme, but such reliance is misguided. That is, while the *Mitchell* Court rejected application of the contributory-negligence doctrine, thus finding it repugnant to Mississippi's deeply ingrained public policy, it did so in light of *Mississippi's superior interests in that case and the effect the doctrine would have upon Mississippi residents*. *Id.* at 510 (emphasis added). *Mitchell*, like this case, involved a vehicular collision in a state other than the parties' state of domicile—that is, the collision occurred in Louisiana, while all parties were from Mississippi. *Id.* Finding that Mississippi residents would be denied recovery due to Louisiana's doctrine of contributory negligence, this Court rejected application of Louisiana's law. *Id.*

¶58. But the rationale justifying the *Mitchell* Court's rejection of a foreign law is not present here, because here, Tennessee has the most significant relationship to the parties,

30

claims, and defenses. In fact, Mississippi has but a fortuitous interest in this case. And so, while Plaintiffs would be entitled greater leeway under Mississippi's pure comparative-fault scheme, that alone is not enough to reject Tennessee's superior interests in applying its own modified comparative-fault rules to its own citizens, and to those doing business in its state—which includes all the parties here. To that end, Tennessee expressly has outlined its policy stance on this issue, stating:

> [W]e nevertheless decline to abandon totally our fault-based tort system. We do not agree that a party should necessarily be able to recover in tort even though he may be 80, 90, or 95 percent at fault. We therefore reject the pure form of comparative fault . . . . [T]he "49 percent rule" ameliorates the harshness of the common[-]law rule while remaining compatible with a fault-based tort system.

*McIntyre*, 833 S.W.2d at 57. Thus, Tennessee's fault scheme can and should be applied, notwithstanding the application of Mississippi's Rules of the Road. *See Fells v. Bowman*, 274 So. 2d 109, 112-13 (Miss. 1973) (holding that, while one state's interest in a case may require application of its rules of the road to determine negligence, another state's interest may require application of its fault-based scheme).

¶59. So, having found that Tennessee has the superior interest as to the issues raised in this appeal, I would hold that Tennessee's substantive laws should govern—and because the respective laws are not repugnant, so as to require their rejection, I would affirm the circuit court's judgment as to the issues outlined above.

    **C.**    **Application of the Most-Significant-Relationship Test to Plaintiffs' Contract-Based Issues**

¶60. Plaintiffs' claims against Church Mutual are contractual in nature, as they sought UIM benefits under the policy issued by Church Mutual to Mt. Vernon. And so, in its same order holding that Tennessee substantive law would govern as to Plaintiffs' negligence claims, the circuit court also held that Tennessee law would control Plaintiffs' contractual claims. The circuit court held such by applying Sections 6, 188, and 193 of the *Restatement (Second)*. Section 188 governs contractual issues generally, while Section 193 addresses more specifically "the uninsured[-]motorist feature of a liability insurance contract[.]" ***Boardman***, 470 So. 2d at 1033; *see generally Restatement (Second) Conflict of Laws §§ 188, 193*.

¶61. Because of the circuit court's holding, Tennessee's UIM motorist statute, Tennessee Code Section 56-7-1201 (2017), applied. And so, Section 56-7-1201, by effect, incorporated Tennessee Code Section 56-7-1206(d) (2017), which pertains to service of process by injured parties on uninsured motorists and its effect on whether a direct action may be maintained.

¶62. To begin, I find it noteworthy that Plaintiffs concede Tennessee's substantive UIM principles govern Church Mutual's policy at issue here, including Tennessee's statutes, regulations, and caselaw. *See **Fleming v. Yi***, 982 S.W. 2d 868, 870 (Tenn. App. 1998) (holding that, as a matter of law, all of Tennessee's UIM statutes become provisions of all automobile insurance policies issued for delivery in Tennessee). So it would appear the circuit court's holding as to Plaintiffs' contractual claims against Church Mutual is a nonissue—however, Plaintiffs and the majority later claim that Plaintiffs *can* maintain a direct action against Church Mutual, which refutes directly the plain language of Section 56-

32

7-1206(d). While the majority agrees with the Plaintiffs, I do not. As such, I address first the circuit court's conclusion that Tennessee law governed Plaintiffs' contractual claims.

### D. *Restatement (Second)* Section 188

¶63. Under Section 188(2), this Court looks to contacts such as "(a) the place of contracting, (b) the place of negotiation of the contract, (c) the place of performance, (d) the location of the subject matter of the contract, and (e) the domicile, residence, nationality, place of incorporation, and place of business of the parties." *Restatement (Second) Conflict of Laws* § 188. And, more specifically, Section 193 provides:

> The validity of a contract of fire, surety or casualty insurance and the rights created thereby are determined by the local law of the state which the parties understood was to be *the principal location of the insured risk during the term of the policy*, unless with respect to the particular issue, some other state has a more significant relationship under the principles stated in § 6 to the transaction and the parties, in which event the local law of the other state will be applied.

*Restatement (Second) Conflict of Laws* § 193 (emphasis added). As this Court in *Boardman* held, "[t]he central thrust of Restatement § 193 is that the law applicable in actions on insurance contracts (other than those providing life insurance) should [be] the law of the state the parties understood was to be the principal location of the risk." *Boardman*, 470 So. 2d at 1033.

¶64. In applying these provisions, I find that the circuit court correctly concluded that Tennessee law governed Plaintiffs' contractual claims. As articulated by the circuit court regarding the contacts under Section 188, both the place of contracting and the place of negotiation were in Tennessee; the contract was substantially performed in Tennessee; the

33

subject matter of the contract (Mt. Vernon's vehicle) was principally garaged in Tennessee; and lastly, we know that the domicile, residence, and place of business of the parties is Tennessee. Thus, Section 188 weighs entirely in favor of Tennessee.

¶65. As for Section 193, the "principal location of the insured risk" in this case must be Tennessee—as the policy before us was issued and delivered in Tennessee, to a citizen of Tennessee, for the coverage of a vehicle principally garaged in Tennessee. *See Boardman*, 470 So. 2d at 1033. Therefore, I would affirm the circuit court's holding and find that Tennessee law governs the parties' contractual claims and defenses. That being so, I now address the effect of Tennessee's UIM statutes on Plaintiffs' claims against Church Mutual.

### E. Tennessee Code Section 56-7-1206(d)

¶66. As a general matter, Tennessee's UIM statutes bar direct actions against insurers for UIM benefits. *See Griffin v. Shelter Mut. Ins. Co.*, 18 S.W.3d 195, 199 (Tenn. 2000) (holding "a plaintiff generally may not institute a direct action against an uninsured motorist carrier"). Thus, "[a]bsent a specific policy provision authorizing a direct action, the uninsured motorist statute does not permit a plaintiff to bring suit directly against an uninsured motorist carrier." *Id.* at 198. But one exception to Tennessee's general bar on direct actions is found under Section 56-7-1206(d).

¶67. Section 56-7-1206(d) provides:

> In the event that service of process against the uninsured motorist, which was issued to the motorist's last known address, is returned by the sheriff or other process server marked, *"Not to be found in my county," or words to that effect*, . . . the service of process against the uninsured motorist carrier, pursuant to this section, shall be sufficient for the court to require the insurer to proceed as if it is the only defendant in the case.

34

Tenn. Code § 56-7-1206(d) (emphasis added). And so, the statute's plain language articulates that the summons must be "returned . . . '[n]ot to be found in my county,' or words to that effect[.]" *See id.* Otherwise, the statute's exception cannot be triggered. *See Liput v. Grinder*, 405 S.W. 3d 664, 675 (Tenn. Ct. App. 2013).

¶68. Applied here, Section 56-7-1206(d)'s exception has not been triggered. Johnson was the alleged at-fault driver. But, as held above, Johnson properly was dismissed from the matter for Plaintiffs' failure to serve him timely under Rule 4(h). And as the record demonstrates, the Plaintiffs' summons was returned as "unclaimed." So, because the returned summons failed to state "'[n]ot to be found in my county,' or words to that effect," Plaintiffs cannot circumvent Tennessee's general bar on direct actions. And in light of this Court's articulation in *Zurich*, I cannot find such a result repugnant to Mississippi's deeply ingrained public policies—considering especially Mississippi's inferior interest in this case. *See Zurich*, 920 So. 2d at 437.

¶69. The majority, however, finds otherwise. Instead, it holds that, because Mississippi's *general rule* allowing direct actions against UIM carriers is similar to Tennessee's *exception*, Plaintiffs' direct action is permitted. (Maj. Op. ¶¶ 33-36) (emphasis added). I find this conclusion untenable, as it ignores the plain language of Section 56-7-1206(d). Section 56-7-1206(d) is clear and should be applied as written. Again, Johnson properly was dismissed because Plaintiffs failed to serve him timely under Rule 4(h). The Plaintiffs' summons was returned as "unclaimed." Therefore, Plaintiffs cannot pursue a direct action against Church Mutual because the returned summons failed to state "'[n]ot to be found in my county,' or

words to that effect[.]" *See Liput*, 405 S.W. 3d at 675. As such, I would affirm the circuit court's order granting Church Mutual summary judgment and dismissing without prejudice Plaintiffs' contractual claims.

## CONCLUSION

¶70. In sum, this interlocutory appeal stemmed from two orders issued by the circuit court—one dismissing Johnson under Rule 4(h), the other holding that Tennessee substantive law governed as to a majority of the parties' claims and defenses. Upon review, I would affirm the circuit court's orders in both respects, including its application of Mississippi's Rules of the Road to determine fault. Moreover, I would affirm the circuit court's grant of summary judgment to Church Mutual, as that judgment was premised upon the circuit court's previous orders, which are the crux of this appeal. As a result, I respectfully concur in part and dissent in part with the judgment.

**WALLER, C.J., AND KITCHENS, P.J., JOIN THIS OPINION.**